MATTHEW DEVIN YOCOM A/K/A MATTHEW DEVIN YOCUM

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-181-CR

MATTHEW DEVIN YOCOM A/K/A APPELLANT

MATTEW DEVIN YOCOM 

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 10 OF TARRANT COUNTY

------------

OPINION

------------

I.  INTRODUCTION

A jury found Matthew Devin Yocom (“Yocom”) guilty of driving while intoxicated (“DWI”), and the trial court assessed punishment at 120 days’ confinement, probated for two years, and a $700 fine.  On appeal, Yocom advances fourteen points of error.  We affirm. 

II.  FACTUAL BACKGROUND

The evidence shows 
Euless Police Officer Scott Peterson 
was conducting a DWI patrol in the early morning of October 24, 2002.
  At around 12:50 a.m., Officer Peterson spotted a truck stopped in a bank parking lot near an ATM machine
.  Officer Peterson noted that the truck had not been there during his earlier patrol
, which occurred around 12:20 or 12:30 a.m.  Officer Peterson then turned his attention to another vehicle that had passed him and committed some traffic violations.  Around fifteen minutes later, after stopping the other vehicle and determining that the driver was free to leave, Officer Peterson came back to the location of the truck.

Officer Peterson noticed that the truck’s motor was running; the break lights were on, which made Officer Peterson assume the driver’s foot was on the break;
 and a male subject, whom Officer Peterson later identified as Yocom, was seated alone in the driver’s seat.  
After arriving at the vehicle’s driver’s side door, Officer Peterson saw that Yocom was slumped over the steering wheel with his head down, the truck was in drive, and his emergency break was engaged.  Officer Peterson knocked and then banged on the window and called to Yocom in an attempt to rouse him.  Moments later, Yocom lifted his head and sat in a “daze” looking at Officer Peterson, who instructed Yocom to open the door or roll down the window and put the car in gear, but Yocom continued to stare at Officer Peterson.  Officer Peterson noticed that Yocom’s eyes had a glazed look and were bloodshot and watery.  Minutes later
, after Officer Peterson continued to ask Yocom to comply, Yocom turned on his windshield wipers, turned both turn signals on and off, put his truck in reverse, and flashed his break lights on and off before Officer Peterson was able to walk Yocom through putting his truck in park and rolling down his window.  Officer Peterson then had Yocom step out of the vehicle.

In the course of performing a number of field sobriety tests, Yocom admitted that he had driven from a bar in Dallas called the Somba Room, where he had consumed beer and drinks containing vodka.
(footnote: 1) 
 
Yocom also informed Officer Peterson that he pulled over in the parking lot because he felt sick and was driving “bad.”  Moreover, when Officer Peterson asked Yocom if he pulled over because he did not want to receive a DWI, Yocom responded, “Yes.”  After noting several signs of intoxication during the course of the tests, Officer Peterson believed Yocom was intoxicated.  Upon searching Yocom’s vehicle, Officer Peterson 
did not find any open containers of alcohol.  Officer Peterson also testified that the truck was registered to Yocom.

Because Yocom was a diabetic, Officer Peterson permitted him to test his blood sugar with a portable test kit.  As a safety precaution, Officer Peterson called the Euless paramedics to the scene, who recommended that Yocom have further evaluation done at the hospital.  Yocom was then transported by ambulance to the hospital.  Officer Peterson accompanied him.

At the hospital, Officer Peterson provided Yocom with a statutory warning and requested a sample of his blood.  Yocom refused.  
Yocom signed the hospital’s “Universal Consent for Treatment” where Yocom “consent[ed] to and authorize[d] testing, treatment, and/or hospital care as ordered by [his] doctor and [the doctor’s staff]” and 
the hospital’s “Admission Acknowledgments” that informed him that his medical records might be released to “any other person or entity as required or allowed by state and federal law.”  
Nurse Tracy Langley testified that she drew a blood sample from Yocom for medical purposes only and not at the behest of the police.  She also testified that Yocom was not under arrest at the hospital, was conscious when he signed the forms, never refused medical treatment, and very willingly and cooperatively handed his arm out for her to draw his blood.
 
 Yocom’s medical records, which  showed he had a blood-alcohol content of approximately 0.2, were later obtained by the State through a subpoena duces tecum. 

II.  LEGAL AND FACTUAL SUFFICIENCY OF EVIDENCE 

In his first two points, Yocom contends that the evidence was legally and factually insufficient to sustain the jury’s verdict that he “operated” a motor vehicle as alleged in the information.  
See 
Tex. Penal Code Ann.
 § 49.04(a) (Vernon 2003) (requiring the State to prove the accused operated a motor vehicle in a public place while intoxicated).  In reviewing the legal sufficiency of the evidence, 
we determine whether, considering the evidence in the light most favorable to the verdict, any rational trier of fact could have found beyond a reasonable doubt that Yocom operated the motor vehicle.  
See Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  In reviewing the factual sufficiency of the evidence, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the verdict, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.  
Johnson v. State
, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). 

While there is no statutory definition of “operate,” the Texas Court of Criminal Appeals has held, “To find operation under [the DWI] standard, the totality of the circumstances must demonstrate that the defendant took action to affect the functioning of [the] vehicle in a manner that would enable the vehicle’s use.”  
Denton v. State
, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995).  The Texas Court of Criminal Appeals has also noted that, while driving involves operation, operation does not necessarily involve driving.  
Id
. at 389. 

A.  Legal Sufficiency of Operation

 Turning to the legal sufficiency of the evidence offered to prove Yocom’s operation of a motor vehicle, the record shows Yocom (1) admitted to driving his truck from a bar in Dallas, where he had consumed alcohol, to the parking lot where he was found; (2) admitted that he had pulled off the road because he felt sick, had driven “bad,” and had been afraid of getting a DWI; (3) had not been in the parking lot for more than 45 minutes; (4) was intoxicated; and (5) had no alcoholic beverage containers in his truck. 

Regardless of whether Yocom operated his truck in Officer Peterson’s presence, a rational trier of fact could have found beyond a reasonable doubt that Yocom operated his truck prior to Officer Peterson’s arrival and that he was intoxicated when he did so.  
See Pope 
v. 
State
, 802 S.W.2d 418, 420 (Tex. App.—Austin 1991, no pet.) (holding evidence showing intoxicated defendant found asleep in truck on remote road, with engine running, and lights on, furnished sufficient evidence of operating a vehicle while intoxicated); 
see also Garver v. State
, No. 05-01-01032-CR, 2002 WL 1133019, at *3 (Tex. App.—Dallas May 31, 2002, pet. ref’d untimely filed) (not designated for publication) (holding only rational conclusion reachable from the evidence that defendant was found intoxicated, in an idling car, in a parking lot, late at night, was that defendant drove to the parking lot while intoxicated).  

Moreover, a rational trier of fact could have found that Yocom operated the truck in Officer Peterson’s presence.  
See Milam v. State
, 976 S.W.2d 788, 789 (Tex. App.—Houston [1st
 Dist.] 1998, no pet.).  In this case, Yocom, in Officer Peterson’s presence,
 (1) had the engine running and the truck in drive; (2) activated his windshield wipers, turn signal and brake lights; and
 (3) put the truck in reverse, before putting it in park and rolling down the window.  
This evidence is legally sufficient to prove that Yocom took action to affect the functioning of his truck in a manner that would enable its use.  
See Denton
, 911 S.W.2d at 390; 
see also Milam
, 976 S.W.2d at 789 
(holding evidence legally sufficient to show operation where defendant was found asleep in car in parking lot, with engine running, car in gear, and foot on brake, and when awakened and told to put car in park, put car in reverse).
(footnote: 2) 

Yocom points to 
Ballard v. State
, 757 S.W.2d 389, 391 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) and 
Reddie v. State
, 736 S.W.2d 923, 927 (Tex. App.—San Antonio 1987, pet. ref'd), where the evidence was found to be insufficient to show “operation,” contending they are similar to this case.  However, we decline to follow these cases because of their limited pre-
Geesa
 value.
(footnote: 3)  We, therefore, overrule Yocom’s first point. 

B.  Factual Sufficiency of Operation 
     

As to Yocom’s second point alleging factual insufficiency, after having reexamined all the evidence as required by the applicable standard of review  we hold that the proof that Yocom was operating his truck while intoxicated is not so obviously weak as to undermine our confidence in the guilty verdict.  
See Johnson
, 23 S.W.3d at 11.  Yocom argues the evidence is insufficient because Officer Peterson admitted that he never saw the vehicle move and that the emergency brake was engaged.  However,
 operation does not necessarily involve moving or driving.  
See Denton
, 911 S.W.2d at 389.  Yocom also argues that the evidence is insufficient because Peterson testified he assumed that Yocom’s foot was on the brake because the brake lights were turning on and off.  However, Officer Peterson’s lack of knowledge regarding the position of Yocom’s feet does not show Yocom was not braking.  
See Garza
, 846 S.W.2d at 938.

Additionally, Yocom argues that Officer Peterson testified that he never saw Yocom engage in any act that “would show that he was trying to operate the vehicle” or “move the vehicle” or show “some exertion of . . . control over the vehicle.”  However, that argument mischaracterizes Officer Peterson’s answer to the following question by defense counsel: “Did you — 
prior to coming into contact with him
 did you see Mr. Yocom commit any act that would show that he was trying to operate the vehicle, move the vehicle, show some exertion of . . . control over the vehicle?”  Officer Peterson replied, “
Prior to my contact
, not to my knowledge, no.”
  Contrary to Yocom’s argument, this testimony is consistent with other evidence that shows, Officer Peterson saw Yocom attempt to operate the truck after coming into contact with him.  

Finally, Yocom argues that there is no evidence that he was intoxicated before the vehicle arrived in the parking lot, of how long he had been intoxicated, or of how long the vehicle had been in the lot.  Once again, Yocom overlooks the evidence presented.  The evidence shows Yocom’s truck could not have been there for more than forty-five minutes before Officer Peterson arrived, Yocom was alone and highly intoxicated, there were no alcoholic beverage containers in or around the truck, and Yocom admitted to drinking three beers and two hard liquor shots at a bar in Dallas.  Viewing all the evidence, as we are required, we find it is factually sufficient to show that Yocom operated a motor vehicle.  We overrule Yocom’s second point.

III. PRE-TRIAL HEARING ON MOTION TO SUPPRESS 

In his third point, Yocom complains that the trial court erred in refusing to grant his request for a pretrial motion to suppress outside the jury’s presence.  The State alleges that Yocom waived this point because his complaint on appeal does not comport with the objection he made at trial.  
We agree. 

To preserve a complaint for our review, a party must make a timely, specific objection and must obtain an adverse ruling from the trial court
.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State,
 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).  Additionally, if a complaint raised on appeal does not comport with the objection made at trial, it is waived.  
Bell v. State
, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), 
cert. denied
, 522 U.S. 827 (1997)
; 
Rezac v. State
, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).

    Before voir dire, Yocom asked the trial court to hold a pretrial hearing on his motion to suppress evidence obtained by the State outside the presence of the jury based on a lack of probable cause and reasonable suspicion to stop. The trial court denied the request stating, “I’ll carry the motion with the trial.”  Yocom then asserted he was entitled to litigate the issue outside the jury’s presence, citing (1) unnamed Supreme Court case law, (2) the Texas Court of Criminal Appeals case of 
Pierce v. State
, 32 S.W.3d 247 (Tex. Crim. App. 2000), and (3) Texas Rule of Evidence 105.  The trial court again denied the request.  During direct examination of Officer Peterson, Yocom “renew[ed] [his] objection to the Court’s failure to afford [him] a separate hearing outside the jury’s presence to determine the admissibility of any evidence obtained [by Officer Peterson] . . . on the night in question under 
Rule 104(a) 
of the Texas Rule of Evidence, as well as 
Pearce 
[sic].
”
 [Emphasis supplied].  The trial court denied the request for a separate hearing and overruled Yocom’s objection stating, “When the State is finished presenting their evidence, I will allow you to put on any evidence that you so desire outside the presence of the jury.” After the State finished presenting its evidence, the trial court heard and overruled Yocom’s motion to suppress outside the jury’s presence. 

On appeal, Yocom argues that he was entitled to an admissibility hearing outside the jury’s presence under Texas Rule of Evidence 
104(c)
.  
The specific grounds for Yocom's complaint on appeal are not apparent from the context of his objection at trial.  While Yocom was not necessarily required to state which statute or law he was relying on in support of his objection, he was required to inform the trial court why he believed he was entitled to the ruling requested.  
See Nash v. State
, 123 S.W.3d 534, 537 (Tex. App.—Fort Worth 2003, pet. filed).  
Yocom provided no basis at trial for why he was entitled to such relief.
 
 Therefore, he waived his point of error because his complaint on appeal does not comport with the objection he made at trial. 
 See Dixon v. State
, 2 S.W.3d 263, 273 (Tex. Crim. App. 1998) (op. on reh’g).  We overrule Yocom’s third point.

IV.  MOTION TO SUPPRESS

In his fourth point, Yocom complains that the trial court erred in denying his motion to suppress evidence obtained as a result of an alleged illegal detention.  
Specifically, Yocom contends that the State failed to show that the community care taking exception applied or that Officer Peterson had reasonable suspicion to detain him.  
The State argues the community care taking exception gave Officer Peterson ample justification for attempting to rouse Yocom, and by the time Yocom submitted to Officer Peterson’s demands, Officer Peterson had reasonable suspicion to detain him.

We review a motion to suppress case through a bifurcated standard of review; we give almost total deference to the trial court's express or implied determination of historical facts and review 
de novo,
 the court's application of the law of search and seizure to those facts.  
State v. Ross
, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).
  
When the trial court does not make explicit findings of historical facts, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supporting its ruling, if those findings are supported by the record.  
Carmouche v. State
, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000).  In determining whether a trial court's decision is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence that may have been introduced later. 
 James v. State
, 102 S.W.3d 162, 170 (Tex. App.—Fort  Worth 2003, pet. ref’d).

Prior to trial, Yocom filed a motion to suppress evidence seized as a result of his detention and arrest, asserting that Officer Peterson did not have the requisite probable cause, reasonable suspicion, lawful warrant, or other lawful authority to detain and arrest him.  At the hearing on the motion, Yocom, the only wintess, testified that when Officer Peterson knocked on his window, he was not in distress, but just asleep.  He also testified that his truck had come to rest in a well lit parking lot; that no other vehicles were around his truck; that he had a cell phone in his console that he could have used to call for assistance; that he did not consider himself a danger to himself or others; and that his emergency brake was engaged.  Finally, he felt he was not free to leave when Officer Peterson banged on his window and told him to open it or he would have to break it.  The trial court denied Yocom’s motion to suppress. 

For the purposes of Fourth Amendment analyses, police-civilian interactions are divided into three categories: (1) encounters, (2) detentions, and (3) arrests.  
See Florida v. Royer
, 460 U.S. 491, 497-99, 103 S.Ct. 1319,  1323-25 (1983).  In an encounter, 
a police officer may approach a citizen without probable cause or reasonable suspicion to ask questions or even to request a search 
because the citizen approached is under no compulsion to remain
. 
See id. 
at
 497-98, 103 S.Ct.1323-24; 
Johnson v. State
, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995).
  Therefore, in this case, Officer Peterson was as free as any other citizen to approach Yocom’s driver’s side window
.  Florida v. Bostick
, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386  (1991); 
Hunter v. State
, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997).  

An encounter becomes a investigative detention if the police officer’s words or conduct would communicate to a reasonable person that he or she is not free to deny the officer’s requests or terminate the encounter.  
See State v. Velasquez
, 994 S.W.2d 676, 680 (Tex. Crim. App. 1999).  
An investigative detention is permitted 
when supported by reasonable suspicion. 
 Terry v. Ohio
, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884-85 (1968); 
Brother v. State
, 85 S.W.3d 377, 382 (Tex. App.–Fort Worth 2002, no pet.).  
Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged in, or is or soon will be engaging in, illegal conduct. 
 Garcia v. State
, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).  The reasonableness of a given detention will turn on the totality of the circumstances in that particular case.  
Woods v. State
, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); 
State v. Sailo
, 910 S.W.2d 184, 188 (Tex. App.—Fort Worth 1995, pet. ref’d).

Even in the absence of any suspicion of criminal activity, the community

caretaking exception allows police officers, as part of their duty to “serve and protect,” to stop or temporarily detain an individual whom a reasonable person would believe is in need of help given the totality of the circumstances. 
 See Wright v. State
, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999).  However, in order to invoke his community caretaking function, the officer’s primary  motive must be concern for the individual’s well-being.  
Corbin v. State
, 85 S.W.3d 272, 277 (Tex. Crim. App. 2002).  Here, the record reflects that Officer Peterson was not sure if Yocom needed help, but was concerned that Yocom may have been a victim of an robbery at the ATM.  Additionally, Officer Peterson testified that he did not know from looking in Yocom’s truck whether Yocom was asleep, sick, or passed out.  We conclude that the trial court, as the exclusive judge of credibility and finder of fact, could have concluded that Officer Peterson was initially primarily motivated by community caretaking concerns.  
See id
. (citing 
Ross
, 32 S.W.3d at 855).

Next, we must determine, based on four nonexclusive factors whether Officer Peterson acted reasonably in detaining Yocom to determine if he needed help: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance independent of that offered by the officer; and (4) to what extent the individual, if not assisted, presented a danger to himself or others.  
Wright
, 7 S.W.3d at 151-52.
 
 The first factor is entitled the greatest weight.  
Corbin, 
85 S.W.3d at 277.

Here, the first and second factors weigh in favor of the detention.  Being asleep or unconscious, slumped over the wheel of a truck with its motor running, in the early morning hours, in a closed bank parking lot, near an ATM that the officer knew had previously been the site of at least two robberies, demonstrates an extremely high level of distress.  
See 
Wayne R. Lafave
, 
Search and Seizure
 § 7.4(f) (3d ed. 1996) (“If the police find a person unconscious or disoriented and incoherent in a vehicle . . . , it is reasonable for them to enter the vehicle for the purpose of giving aid to the person in distress and of finding information bearing upon the cause of his condition.”). 

The third factor also weighs in favor of the detention.  While Yocom presented evidence that he had a cell phone 
inside his console
 that he could have used to call for help, there was no evidence Officer Peterson was aware of its presence.  Moreover, the evidence did show Yocom was alseep or unconscious,  alone in his truck, stopped at a closed business, late at night, with no other cars around. 
 
At worst, this factor is neutral in determining if the detention was reasonable.
  

Finally, the fourth factor also weighs in favor of the detention. While Yocom testified that he was not a danger to himself or anyone else, the evidence shows that, if Officer Peterson simply left Yocom alone, Yocom could have died from carbon monoxide poisoning from the running engine or from diabetic shock.  Applying the 
Wright
 factors, we conclude that Officer Peterson’s exercise of his community caretaking function was reasonable.  

Yocom argues that once he awoke, Officer Peterson “was able to see that the situation presented nothing more than an individual who had good sense to pull over and take a nap in a well-lit parking lot.”  This statement could not be further from the truth. 
In the three plus minutes it took Officer Peterson to rouse Yocom and make contact with him in order to determine if he was in need of assistance,
(footnote: 4) Officer Peterson obtained this additional evidence:  Yocom had a difficult time waking; he appeared to be in a daze; his eyes appeared to be glassy, watery, and bloodshot; and he was not able to follow the officer’s instructions, which prompted Officer Peterson to conclude to his partner, “He’s drunk though.”  These facts are sufficient to justify Officer Peterson’s further detention of Yocom based on reasonable suspicion. 
 
See 
Garcia
, 43 S.W.3d at 530.  
Therefore, 
we overrule Yocom’s fourth point.

V.  ADMISSION OF BLOOD TEST RESULTS

In point five, Yocom complains the trial court erred in admitting his medical records containing evidence of his blood-alcohol test results because the State failed to show his consent to the blood draw was voluntarily obtained.  In response, State contends that Yocom cannot claim that his consent was involuntary because he failed to present evidence to the trial court that the blood was drawn as a result of “state action” that violated his constitutional rights.

At trial and in his third letter brief, Yocom argues that by obtaining records of the blood draw on the “strength of the subpoena” and then introducing it at trial, the State acted to implicate his constitutional rights.  In support of this proposition, Yocom cites 
Thurman v. State,
 where the court of appeals held, “[a] grand jury subpoena plainly constitutes state action, and may amount to an illegal seizure.”  
Thurman v. State, 
861 S.W.2d 96, 98 (Tex. App.—Houston [1
st
 Dist.] 1993, no pet.)
.

Thurman
 does not support Yocom’s argument, nor do we find it persuasive.  
Thurman
 deals with a grand jury subpoena, not a subpoena duces tecum.  Additionally, as the only support for its holding, the 
Thurman 
court cites 
Boyle v. State
, where the Texas Court of Criminal Appeals determined that 
arresting a defendant pursuant to a grand jury material witness attachment was an attempt to circumvent his constitutional rights and illegal.  
Boyle v. State
, 820 S.W.2d 122, 129-30 (Tex. Crim. App. 1989), overruled on other grounds by 
Gordon v. State
, 801 S.W.2d 899, 911 n.13 (Tex. Crim. App. 1990).
  Here, no similar “state action”
 
occurred
.  
Instead, the record shows that (1) Yocom voluntarily consented to medical treatment by the hospital; (2) he was aware that the hospital could be required by law to turn over such records; (3) he allowed hospital staff to take a blood draw for therapeutic medical purposes; and (4) the State obtained the records through a subpoena duces tecum. Yocom has not explained how the State’s use of a subpoena duces tecum to obtain his medical records constituted an unreasonable search and seizure.  We
 
overrule Yocom’s fifth point. 

In points six through eight, Yocom complains his medical records were obtained in violation of the Fourth Amendment, article I, section 9 of the Texas Constitution, and article 38.23 of the Texas Code of Criminal Procedure.  As the basis for these points, Yocom argues that the Health Insurance Portability and Accountability Act (HIPPA) overruled 
State v. Hardy.
(footnote: 5)  The initial date for covered entities, like the hospital in this case, to comply with the privacy standards of HIPPA was April 14, 2002.  
See 
45 C.F.R. § 164.534 (2002); 
See Tapp v. State
, 108 S.W.3d 459, 463 (Tex. App.—Houston [14
th
 Dist.] 2003, pet. ref’d). Therefore, any noncompliance prior to that time cannot constitute a violation of the regulation.  
See Tapp
, 108 S.W.3d at 463.  
Here, compliance with HIPPA was not required at the time the evidence was obtained.  Therefore, HIPPA in its pre-enforcement stage did not overrule 
Hardy
.  
Id
.
 
 We
 
overrule Yocom’s six, seventh, and eight points.

VI.  JURY CHARGE

In points nine and ten, Yocom complains that the trial court erred in failing to instruct the jury under article 38.23
(footnote: 6) regarding the voluntariness of his consent to give a blood sample and whether Officer Peterson had reasonable suspicion pursuant to detain him.  In points eleven and twelve, Yocom complains that the trial court erred in denying his request that the court define the term “operating” in the jury charge and instruct the jurors on the 
“reasonable hypothesis of guilt” analytical construct
.

Appellate review of error in a jury charge involves a two-step process.  
Abdnor v. State
, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Initially, we must determine whether error occurred.  If so, we must then evaluate whether sufficient harm resulted from the error to require reversal. 
 Id.
 at 731-32.  Error in the charge, if timely objected to in the trial court, requires reversal if the error was “calculated to injure [the] rights of the defendant,” which means no more than that there must be 
some
 harm to the accused from the error.  
Tex. Code Crim. Proc. Ann
. art. 36.19 (Vernon 1981); 
see also Abdnor
, 871 S.W.2d at 731-32; 
Almanza v. State
, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g).

A.  Article 38.23 Instructions

Under article 38.23 of the Texas Code of Criminal Procedure, the trial court is required to exclude any evidence that it finds, as a matter of law, was obtained in violation of the Constitution or the laws of the United States or of the State of Texas.  art. 38.23(a)
; 
Franks v. State
, 90 S.W.3d 771, 806 (Tex. App.—Fort Worth 2002, pet. ref’d.).  However, where there is only a fact issue regarding the manner in which the evidence was obtained, article 38.23 requires the court to submit the question to the jury.  
Franks
, 90 S.W.3d at 806.  In such event, the trial court must include an instruction to the jury to disregard the evidence, if the jury believes, or has a reasonable doubt, that the evidence was obtained in violation of the law.  art. 38.23(a)
.  The only question is whether, under the facts of a particular case, the defendant raised the issue by the evidence, thus requiring the jury instruction.  
Franks
, 90 S.W.3d at 806.

1.  Instruction on Voluntariness of Consent 

Yocom argues that Nurse Langley’s testimony was inherently contradictory and created 
a factual dispute about whether the blood sample was taken voluntarily.
  However, Yocom cites no evidence in the record to suggest that he was coerced or persuaded to give his consent to a blood draw by the hospital.  Instead, the evidence shows that Yocom signed (1) the hospital’s “Universal Consent for Treatment,” in which he “consent[ed] to and authorize[d] testing, treatment, and/or hospital care as ordered by [his] doctor and [the doctor’s staff]” and (2) 
the hospital’s “Admission Acknowledgments” that informed him that his medical records might be released to “any other person or entity as required or allowed by state and federal law.”  Langley testified she was not working for the police, and that Yocom was not under arrest at the hospital, was conscious when he signed the forms, never refused medical treatment, and very willingly and cooperatively handed his arm out for her to draw his blood. 

In an attempt to show that Langley’s testimony was “inherently contradictory,” Yocom points to her testimony that (1) she never told Yocom that his blood sample would be turned over to the police and (2) she
 
was not aware that he consented to his blood sample being turned over to police.  The State argues
 that Yocom fails to raise a sufficient factual dispute for the jury to resolve.  We agree.  There is complete agreement on what occurred and how the blood specimen was obtained, but a legal dispute over the application of the law to the undisputed facts.
 
 Accordingly, article 38.23(a) was not implicated.
  
See Franks
, 90 S.W.3d at 806.  
We overrule Yocom’s ninth point. 

2.  Instruction on Reasonable Suspicion to Detain

Yocom also argues that Officer Peterson’s testimony was inherently contradictory and created 
a factual dispute about whether reasonable suspicion existed to detain him.  
However, Yocom cites no evidence in the record to suggest that Officer Peterson did not have reasonable suspicion at the time he 
detained
 Yocom
. 
 Instead
, Yocom points to evidence regarding why Officer Peterson 
approached
 Yocom’s stopped truck.  
That evidence shows
 
Officer Peterson testified that when he approached Yocom’s vehicle, he 
had not seen Yocom commit any traffic violation, had no warrants for his arrest, had no reasonable suspicion, and did not know what was “going on.”  He later added that 
prior to contacting
 Yocom, he was concerned that Yocom might have been a victim of a robbery because there had been at least two assaults in that bank parking lot.

Additionally, Yocom concludes by citing 
Reynolds v. State
, for the proposition that an article 38.23 charge is required where evidence raises a fact question as to the legality of a traffic stop. 
 
 
Reynolds v. State
, 848 S.W.2d 148, 149 (Tex. Crim. App. 1993).
  However, the alleged factual dispute 
Yocom points to does not deal with a traffic stops, but an officer approaching a stationary vehicle.  As the State correctly points out, a police officer does not need reasonable suspicion to approach such a vehicle.  
See Royer
, 460 U.S. at 497-98, 103 S.Ct. at 1323-24 (1983) (holding a police officer may approach a citizen without probable cause or reasonable suspicion to ask questions or even to request a search); 
Johnson
, 912 S.W.2d at 235 (Tex. Crim. App. 1995) (holding same).  
Therefore, Yocom failed to identify a factual dispute regarding whether Officer Peterson had reasonable suspicion to
 detain 
him that would require an article 38.23 instruction.  We overrule Yocom’s tenth point. 

C.  Instruction Defining “Operating”

As a general rule, terms not statutorily defined need not be defined in the jury charge, but instead are to be given their common, ordinary, or usual meaning.  
See Martinez v. State
, 924 S.W.2d 693, 698 (Tex. Crim. App. 1996).  Jurors are presumed to know and apply such common and ordinary meanings.  
See
 
Cuevas v. State
, 742 S.W.2d 331, 346 (Tex. Crim. App.1987), 
cert. denied
, 485 U.S. 1015 (1988), 
overruled on other grounds by Woolridge v. State
, 827 S.W.2d 900, 906 (Tex. Crim. App. 1992).  Only if the word or term does not have a common meaning that the jurors can be fairly presumed to know and apply, must a definition be supplied.  
Resendiz v. State
, 112 S.W.3d 541, 550 (Tex. Crim. App. 2003).  Additionally, terms that have a technical legal meaning may need to be defined, particularly “when there is a risk that the jurors may arbitrarily apply their own personal definitions of the terms or where a definition of the term is required to assure a fair understanding of the evidence.”  
Middleton v. State
, 125 S.W.3d 450, 454 (Tex. Crim. App. 2003).  However, simply because a term has acquired a technical legal meaning does not necessarily mean that it has to be defined.  
Id
. (citing 
Andrews v. State
, 652 S.W.2d 370, 375-76 (Tex. Crim. App. 1983)).  “A trial court has broad discretion in submitting proper definitions and explanatory phrases to the jury.”  See 
Macias v. State
, 959 S.W.2d 332, 336 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd).

Here, Yocom argues that although “operating” is not statutorily defined, it should have been defined because it has a technical legal meaning.  The State counters that “operating” is not a legal technical term that an average juror could not be expected to understand without guidance from the trial court.  We agree with the State. The term “operating” has not “acquired a peculiar . . . meaning in the law.”  
Medford
 
v. State
, 13 S.W.3d 769, 772 (Tex. Crim. App. 2000).  Instead, courts have consistently applied a plain meaning to the word, allowing jurors to freely construe the term to have any meaning within its normal usage.  
See Denton
, 911 S.W.2d at 390; 
Barton
, 882 S.W.2d at 459.  Even Yocom’s counsel recognized this when he told the trial court at one point that, “[b]ecause the term operate is not defined in the Penal Code case law says we have to interpret it in its normal usage.”  Accordingly, we overrule Yocom’s eleventh point.

D.  Instruction on “Reasonable Hypothesis of Guilt
”

In 
Geesa v. State, 
the Texas Court of Criminal Appeals discarded the reasonable hypothesis of guilt analytical construct altogether, stating that the construct was inappropriate both as a jury instruction and a standard of review. 
820 S.W.2d 154, 161-63 (Tex. Crim App. 1991).  However,
 
the court also held that abrogation of the reasonable hypothesis of guilt analytical construct necessitated the requirement of a full definitional instruction to the jury on reasonable doubt. 
 Id.
 at 161.  Nine years later, in 
Paulson v. State
, the court overruled that portion of 
Geesa
 that required trial courts to instruct juries on the definition of “beyond a reasonable doubt.” 28 S.W.3d 570, 573 (Tex. Crim. App. 2000).
 
 Yocom invites this court to interpret 
Paulson
 as resurrecting the pre-
Geesa 
standard which required an instruction on the “reasonable hypothesis of guilt” analytical construct.  We decline this invitation.

In 
Paulson
, 
the court specifically limited its decision to that portion of 
Geesa
 which required trial courts to instruct juries on the definition of “beyond a reasonable doubt.”  
Id.
  To find that a repudiation of the “beyond a reasonable doubt” instruction necessarily means a return to jury instructions on circumstantial evidence would be to follow the same logic criticized by the court in 
Paulson. Id.
 at 572.  We conclude that a jury instruction on the “reasonable hypothesis of guilt” contruct 
 is improper.  Therefore, we hold that the trial court committed no error in failing to give such an instruction in the instant case.  Appellant's third point of error is overruled.

VII.  CLOSING ARGUMENTS 

In his fourteenth point, Yocom complains the trial court erred in overruling his objection that the prosecutor argued matters outside the record during closing arguments.  
In his thirteen point, Yocom complains the trial court erred in denying his request for a mistrial after the prosecutor argued contrary to the court’s charge during closing arguments.

A.  Argument Outside the Record 

To be permissible, the State’s jury argument must fall within one of the following four general areas:  (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) pleas for law enforcement. 
 Felder v. State
, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), 
cert. denied
, 510 U.S. 829 (1993); 
Alejandro v. State
, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).
  
If a jury argument exceeds the bounds of proper argument, the trial court’s erroneous overruling of a defendant’s objection is not reversible error unless it affected the appellant’s substantial rights.  
Tex. R. App. P. 
44.2(b); 
Martinez v. State
, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000); 
Mosley,
 983 S.W.2 at 259.  A trial court’s denial of an objection to argument outside the record is nonconstitutional error and is analyzed under 
Tex. R. App. P.
 44.2(b).  
Martinez
, 17 S.W.3d at 692. 
 

Here, after discussing how Yocom’s high blood-alcohol level showed he had lost the normal use of his mental and physical faculties, the prosecutor stated, “That should be terrifying.  He made it somehow to Euless.  Are we lucky nobody died?  Yes, we are.”  
At that point, Yocom objected that the prosecutor’s argument was not a reasonable deduction from the evidence and that it was outside the record.  The trial court overruled the objection.  On appeal, Yocom complains that this prosecutor’s comment, was outside the record, was not a reasonable deduction from the evidence, and injected new harmful facts into the trial.  We disagree.

The facts show (1) Yocom admitted that he had been drinking at a bar in Dallas; (2) Officer Peterson stated to Yocom “you got pretty far;” (3) Yocom was extremely intoxicated; and (4) Yocom admitted that he had pulled over because he was not feeling well and was driving “bad.”  Based on these facts, the prosecutor’s jury argument was a reasonable deduction from the evidence.  
See Rocha v. State
, 16 S.W.3d 1, 22-23 (Tex. Crim. App. 2000) (holding argument that defendant would join a prison gang was properly deduced from fact that defendant “consistently committed crimes in groups”); 
Bobbit v. State
, No. 2-01-506-CR, 2003 WL 21197606, *1 (Tex. App.—Fort Worth May 22, 2003, no pet.) (not designated for publication) (holding argument that drunk drivers like defendant injure or kill people was a reasonable deduction from the evidence).  Accordingly, we overrule Yocom’s fourteenth point.

B.  Argument Contrary to Charge

When the trial court sustains an objection to an improper jury argument and instructs the jury to disregard but denies a defendant’s motion for a mistrial, the issue is whether the trial court erred in denying the mistrial.  
Faulkner v. State
, 940 S.W.2d 308, 312 (Tex. App.—Fort Worth 1997, pet. ref’d) (en banc op. on reh’g).  Its resolution depends on whether the court’s instruction to disregard cured the prejudicial effect, if any, of the improper argument.  
Id.  
Generally, an instruction to disregard impermissible argument cures any prejudicial effect.  
Wesbrook v. State
, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), 
cert. denied,
 532 U.S. 944 (2001); 
Dinkins v. State
, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995), 
cert. denied
, 516 U.S. 832 (1995). 

In assessing the curative effect of the court’s instruction to disregard, the correct inquiry is whether, in light of the record as a whole, the argument was extreme, manifestly improper, injected new and harmful facts into the case, or violated a mandatory statutory provision and was thus so inflammatory that the instruction to disregard was ineffective.  
Wesbrook,
 29 S.W.3d at 115-16
.  If the instruction cured any prejudicial effect caused by the improper argument, a reviewing court should find that the trial court did not err.  
Dinkins
, 894 S.W.2d at 357;  
Faulkner
, 940 S.W.2d at 312.  Only if the reviewing court determines the instruction was ineffective does the court go on to determine whether, in light of the record as a whole, the argument had a substantial and injurious effect or influence on the jury’s verdict.  
Tex. R. App. P. 
44.2(b); 
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).
 
 

The information in this case alleges that Yocom lost the normal use of his mental and physical faculties by reason of the introduction of alcohol into his body, but does not allege that he was intoxicated as a result of having a blood-alcohol level of 0.08 or greater.  Therefore
, the court’s charge reflected only what the information alleges, making no mention of this latter type of  
intoxication
.  
During the prosecutor’s
 closing arguments at the guilt-innocence phase of the trial, the following exchange took place:   

[PROSECUTOR]:  There’s at least three people the State of Texas does not want operating motor vehicles on their roadways.  That’s a person who does not have the normal use of their mental faculties, a person that does not have the normal use of their physical faculties and a person who has an alcohol concentration level of 0.08 or greater.

At that point, Yocom objected that the prosecutor’s argument was contrary to the court’s charge.  The trial court sustained the objection, instructed the jury to disregard the objectionable statement, and denied Yocom’s request for a mistrial.  Notwithstanding the curative instruction, appellant asserts harm on the basis that the error “took place immediately before jury deliberations” and “not in the middle of trial where any harmful effect may have been attenuated.”  Appellant's conclusory assertion is not compelling and does not accurately reflect the record.
(footnote: 7)  
Mayo v. State
, 17 S.W.3d 291, 300 (Tex. App.—Fort Worth 2000, pet. ref’d).  We agree with the State that because appellant fails to present any argument or relevant authority to negate the presumption that the instruction to disregard cured any harm, he has waived error, if any. 
 Id.
; 
Bridgewater v. State
, 905 S.W.2d 349, 354 n.5 (Tex. App.—Fort Worth 1995, no pet.).  We overrule Yocom’s thirteenth point.
(footnote: 8)
VIII.  CONCLUSION 

Having overruled all of Yocom’s points, we affirm the trial court’s judgment.

BOB MCCOY

JUSTICE

PANEL A: CAYCE, C.J.; GARDNER and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: April 8, 2004

FOOTNOTES
1: Yocom’s hospital records show that he admitted to consuming three beers and two hard liquor shots.

2: 
Yocom cites 
Garza v. State
, 846 S.W.2d 936, 938-39 (Tex. App.—Houston [1st
 Dist. 1993, pet. ref’d.) arguing that because he 
activated his windshield wipers, turn signals, and break pedal and put his truck in reverse “in response”
 to Officer Peterson’s instructions to put his truck in park, turn it off, and open the door or window, those activities cannot be offered to show Yocom operated the vehicle.  However, because Yocom did not operate his car as directed by the police, as was the case in 
Garza
, this case is distinguishable from the facts in 
Garza. 

3: 
In these cases the reviewing courts were required to apply the reasonable hypothesis of guilt analytical construct.  
Geesa v. State
, 820 S.W.2d 154, 158 (Tex. Crim. App. 1991), 
overruled in part on other grounds
, 
Paulson v. State
, 28 S.W.3d 570 (Tex. Crim. App. 2000).  In other words, as to a conviction based on circumstantial evidence, the State had to exclude all reasonable hypotheses, other than the defendant's guilt, in order for the evidence to be legally sufficient on appeal. 
 Geesa
, 820 S.W.2d at 161.  The reasonable hypothesis analytical construct was overturned in 
Geesa
, and no longer binds this court. 
 Id
.  Thus Yocom's cited pre-
Geesa 
authorities are “not controlling and are of limited value.” 
 Barton v. State
, 882 S.W.2d 456, 458-59 (Tex. App.—Dallas 1994, no pet.); 
Wilson v. State
, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999).  Additionally, in section VI(D), 
we decline Yocom’s invitation to interpret 
Paulson
 as resurrecting the pre-
Geesa 
standard.  
See 
Sonnier v. State
, 913 S.W.2d 511, 516 (Tex. Crim. App. 1995) (declining to resurrect the doctrine). 

 

4: 
The trial court had the discretion to conclude that Yocom was not seized until he began to comply with the officer’s directions.  
See California v. Hodari D.
, 499 U.S. 621, 626-29, 111 S.Ct. 1547, 1550-52 (1991) (no seizure for Fourth Amendment purposes when defendant did not acquiesce in show of police authority); 
see also Johnson v. State
, 912 S.W.2d at 234-35.

5: 
See State v. Hardy
, 963 S.W.2d 516, 527 (Tex. Crim. App. 1997) (holding appellant does not have a reasonable expectation of privacy in  blood-alcohol test results taken by hospital personnel solely for medical purposes); 
See also Ramos v. State
, 124 S.W.3d 326, 336-38 (Tex. App.—Fort Worth 2003, no pet. h.). (following 
Hardy
 and holding there is no constitutional or statutory expectation of privacy in such medical records).

6: 
Article 38.23 states in relevant part: 

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. 
In any case where the legal evidence raises an issue hereunder
, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.
 
[Emphasis supplied.] 
Tex. Code Crim. Proc. Ann
. art. 38.23 (Vernon 2004T.

7: The argument was not made “immediately before the jury deliberation” as Yocom alleges, but made near the end of the prosecution’s closing argument, which was followed by Yocom’s closing arguments, and the State’s rebuttal.  

8: In this issue, Yocom also argues that the prosecutor’s statement was contrary to his pretrial motion in limine asking that the State not “ask [the] jury at the end of the evidence to convict [Yocom] on the theory that he had a blood alcohol content in excess of .08" during the State’s opening statements. However, Yocom makes no argument and cites no authority for this proposition.  
Tex. R. App. P.
 38.1(h).  Moreover, violation of a ruling on a motion in limine is not, alone, a basis for appellate relief.  
Geuder v. State
, 115 S.W.3d 11, 15 n.11 (Tex. Crim. App. 2003).  Accordingly, nothing was preserved for our review. 
See id
.