Jose Franco ARMENDARIZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–00–00457–CR.

Court of Appeals of Texas,
El Paso.

Dec. 6, 2001.

H. Thomas Hirsch, Hirsch & Stroder, L.L.P., Odessa, for Appellant.

John W. Smith, District Attorney, J. Roderick Price, Deputy District Attorney, Odessa, for State.

Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

## OPINION

LARSEN, Justice.

Jose Franco Armendariz appeals the trial court's decision to deny suppression of cocaine that was seized in the course of his stop, search, and arrest. We reverse and remand.

### Facts

On June 10, 1999, the Odessa City Police Department received an anonymous tip that Armendariz would be in possession of cocaine and heading to a location outside the Odessa city limits at the intersection of FM 1936 and West 42nd Street in Ector County.[1] The informant also told the officers that Armendariz would be in one of three vehicles, one of which was a green Lincoln, and the location of Armendariz's trailer.

In response to the tip, Odessa City Police Officer Jordan Medrano marshaled his staff and requested the help of Ector County Deputy Sheriff Keith Paquette in locating Armendariz's trailer. Paquette accompanied the Odessa city police to an area outside the Odessa city limits and helped Medrano locate Armendariz's trailer. Medrano then set up surveillance.

Medrano saw Armendariz get into a green Lincoln which matched the informant's information and drive away from the trailer. He radioed Paquette who then observed the Lincoln pass a vehicle on the right shoulder of the road while traveling northbound on FM 1936. Paquette radioed this information to Odessa City Police Officer Robert Doporto ("Doporto"). Doporto and Odessa City Police Officer Chris Aguilar ("Aguilar") then executed a police stop and search of the Lincoln, and ultimately Armendariz's arrest.

It is undisputed that the stop and search of the Lincoln, and Armendariz's arrest took place outside the Odessa city limits, and that Deputy Paquette was the only law enforcement agent to see the alleged traffic violation that led to the stop. It is undisputed that prior to the stop of the Lincoln and the discovery of the cocaine in the door side pocket of the vehicle, no one other than Paquette saw Armendariz commit any violations of the law. It is undisputed that Paquette was not involved in the stop, search, or arrest. In fact, by the time Paquette arrived at the scene of the stop, Armendariz's vehicle had already been searched, cocaine discovered in the vehicle, and Armendariz placed under arrest. Paquette testified that he could not make the stop himself because he was in an unmarked, undercover police vehicle.

Aguilar was present from the inception of the stop, search, and arrest till its completion. At the suppression hearing, Agui-

---

1. While the Odessa city police had been given Armendariz's name, they had no physical description of him beyond the fact that he was a Hispanic male.

lar testified he heard Armendariz consent to the search of the Lincoln in Spanish although the videotape of the stop does not reflect that oral consent. Aguilar later testified at trial that Armendariz gave his consent solely by nodding his head and that Aguilar was not close enough to hear Armendariz say anything. The videotape does however show that Aguilar was within hearing distance at the point at which Armendariz could have given verbal consent to a search.

Aguilar further testified that Armendariz gave his consent to Doporto. At the suppression hearing, Doporto testified that he could not hear Armendariz giving consent to search but that Armendariz had nodded his consent. At trial he testified that Armendariz nodded his head "yes" and said, "Yes, I consent to the search." Doporto also maintained at trial that he could hear Armendariz consenting to the search on the videotape even though he admitted he was changing his testimony from that given at the suppression hearing.

Armendariz testified he did not consent to the search of the Lincoln. The defense also offered the testimony of the court-appointed interpreter who listened to the tape at least ten times in an attempt to determine whether oral consent was given. She testified she could not hear the officers ask Armendariz for permission to search the Lincoln, or hear Armendariz give consent to such a search.[2]

Odessa City Police Officer Lt. Vic Sikes testified he conducted and controlled the entire Armendariz investigation, stop, and arrest on behalf of the Odessa city police. There were no supervisors from the County Sheriff's Office present. It was undisputed that Armendariz was not turned over to the Ector County Sheriff's Department following his arrest. Odessa city police were also responsible for booking Armendariz at the Ector County detention center.[3]

The trial court denied Armendariz's motion to suppress and held that the Odessa city police did have probable cause to stop, search, and arrest Armendariz because Deputy Paquette was in the area. The case was then tried to the bench, and Armendariz was found guilty of intentionally and knowingly possessing a controlled substance, cocaine, in an amount more than four but less than two hundred grams.

## Standard of Review

■ With regard to motions to suppress, we review the trial court's findings of fact under an abuse of discretion standard and will not disturb those findings as long as they have support in the record. *Whitten v. State*, 828 S.W.2d 817, 820 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim.App.1990). In contrast, the trial court's conclusions of law and the application of those principles to the facts of the case are reviewed *de novo. State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App.2000).

## Applicable Substantive Law

Texas law does not authorize a peace officer to make warrantless arrests anywhere within the State. *McCain v. State*,

2. The Court has watched the videotape of the stop, search, and arrest and agrees that if Armendariz did consent to the search of the Lincoln, it is not recorded on the videotape.

3. How much time actually elapsed from the time of the stop till the time of booking is not clear. What is clear is that the Odessa city police kept Armendariz in their custody through a search of his residence before he was transported to the Ector County detention center.

995 S.W.2d 229, 234 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd); *Angel v. State*, 740 S.W.2d 727, 732 (Tex.Crim.App. 1987). Instead, it limits a peace officer outside his jurisdiction to arrest without a warrant when a person "commits an offense within the officer's presence or view, if the offense is a felony, ... or a breach of the peace...." TEX.CODE CRIM. PROC. ANN. art. 14.03(d) (Vernon Supp.2002) ("the Code"); *see Thomas v. State*, 864 S.W.2d 193, 196 (Tex.App.—Texarkana 1993, pet. ref'd). The Code also specifically prohibits peace officers, other than those commissioned by the Public Safety Commission and the Director of the Department of Public Safety, to arrest outside of their jurisdiction for violations of the Transportation Code. TEX.CODE CRIM. PROC. ANN. art. 14.03(g) (Vernon Supp.2002). Passing on the right can be a violation of the Transportation Code. *See* TEX. TRANSP. CODE ANN. §§ 545.057 and 545.058 (Vernon 1999).[4]

■ Applying these basic legal principles to the undisputed facts of this case leads inevitably to a single conclusion— neither Doporto nor Aguilar were authorized under Texas law to stop Armendariz. First, they were outside their jurisdiction and therefore without authority to stop Armendariz, and second, they lacked the specific authority to act on Paquette's report of a traffic violation arrest. *See McCain*, 995 S.W.2d at 234–35; *Dominguez v. State*, 924 S.W.2d 950, 956 (Tex. App.—El Paso 1996, no pet.); TEX. TRANSP. CODE ANN. §§ 545.057 and 545.058 (Vernon 1999).

■ Nevertheless, the trial court found that probable cause existed for the stop based on the information given to the Odessa city police from the confidential informant. Under some circumstances, a police officer may lawfully stop a person based on information furnished by a third party. *See Florida v. J.L.*, 529 U.S. 266, 272, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). On this issue, the word "lawfully" is dispositive. Stated another way, the Odessa city police that stopped, searched, and arrested Armendariz were, by definition, acting "unlawfully" because they did not have the authority to so act. On this basis alone, the trial court erred in finding probable cause existed for the search.

■■ Even if we were to assume that the Odessa city police did have jurisdictional authority, the trial court's legal conclusion that there was probable cause because of the confidential information still fails to pass constitutional muster. A peace officer may stop a person if he forms a reasonable suspicion that "some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime." *Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Crim.App.1983). In this instance, the State concedes that the undisputed testimony of every Odessa city police officer was that the stop was made because of Paquette's radio report concerning an alleged traffic violation, *not* because of the informant's information. It was also undisputed that none of the Odessa city police observed Armendariz committing any activity out of the ordinary that would have led them to conclude that criminal activity had or was about to take place.

■ In support of the trial court's legal conclusion that probable cause exist-

---

4. Both Doporto and Medrano testified Armendariz was stopped solely because of Paquette's radio report that Armendariz had passed a motorist on the right hand shoulder in violation of the Transportation Code.

ed because of the informant's tip, the State relies on a Fifth Circuit decision which stands for the proposition that the totality of the circumstances must be considered in determining whether a stop is legal. *See U.S. v. Wright*, 588 F.2d 189, 192 (5th Cir.1979). While we agree that is a correct statement of the law, the *Wright* case does not apply to these circumstances and is factually distinguishable from the instant. More relevant to this case is the well-established legal principle that although an accurate description of a subject's readily observable location and appearance will help the police correctly identify the person whom the tipster means to accuse, it does not show that the tipster has knowledge of the concealed criminal activity. *J.L.*, 529 U.S. at 272, 120 S.Ct. 1375; *Dowler v. State*, 44 S.W.3d 666, 670 (Tex.App.—Austin 2001, pet. ref'd). The corroboration of details that are easily obtainable at the time the information is provided and which do not indicate criminal activity therefore will not lend support to the tip. *Davis v. State*, 989 S.W.2d 859, 864 (Tex.App.—Austin 1999, pet. ref'd). The critical part of this analysis is that a meaningful corroboration between the nature of the tip given and the reason for the stop must exist. *Dowler*, 44 S.W.3d at 670–71. No such connection can be demonstrated in this case. The articulated reason for this stop—that Armendariz committed a traffic violation—bears no relation to the nature of the tipster's information, that Armendariz would have illegal drugs in his possession.

■ The State also contends that Paquette's presence cloaked the Odessa city police with authority to arrest. However, on their face the relevant statutory provisions, and well-established law, require that the arresting officers outside their jurisdiction physically witness the acts that give rise to a reasonable suspicion for the stop. *See* TEX.CODE CRIM. PROC. ANN. arts. 14.01 and 14.03(d) (Vernon 1977 & Supp. 2002); *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993) (quoting *Terry*, 392 U.S. at 30, 88 S.Ct. 1868).

Even if Paquette's view of the traffic violation could be imputed as personal knowledge of Doporto and Aguilar, however, the Odessa city police who ultimately searched and arrested Armendariz further violated the requirements of the Code by failing to notify the law enforcement agency that had jurisdiction over Ector County as soon as was practicable after his arrest to ensure those authorities took him into custody. *See* TEX.CODE CRIM. PROC. ANN. art. 14.03(d) (Vernon Supp.2002); *Yeager v. State*, 23 S.W.3d 566, 571 (Tex.App.—Waco 2000, pet. filed).

■ The trial court also found that because the search was "consensual" any taint from the stop did not extend to the arrest which occurred after the discovery of the cocaine in the Lincoln expanded the officers' reasonable suspicion into probable cause. This Court has previously held that when no authority for the stop exists in the first place, the consent to search does not attenuate the taint and any evidence seized in the course of such search must be excluded as fruit of the poisonous tree. *Dominguez*, 924 S.W.2d at 956. Therefore, the trial court's decision to deny suppression was erroneous as a matter of law and must be reversed.

Lastly, the trial court apparently adopted the State's argument that the stop was made pursuant to a "multi agency investigation[s] ... at the behest of a civilian clothed undercover Sheriff's Deputy." The record reveals otherwise. Odessa City Police Officer Sikes testified he was in complete control of the operation from start to finish. He also testified that the sole purpose of the operation was to "stop,

make a stop on the vehicle." The intent of the Odessa city police to stop Armendariz for any reason thus existed even before they called Paquette to help them locate Armendariz's trailer. In short, the stop was made at the behest of the Odessa city police, not the Ector County Sheriff as the State implies. Finally, the record does not contain legally dispositive proof that this investigation, stop, search, or arrest was made pursuant to an official multi-agency agreement. *See Dominguez*, 924 S.W.2d at 956–57 (opinion on rehearing).

### Conclusion

■ For these reasons, we conclude that Doporto's and Aguilar's initial stop of Armendariz's vehicle was unlawful and that, as the fruit of the poisoned tree, the cocaine seized in the search and arrest that followed should have been suppressed as evidence by the trial court. *See Dominguez*, 924 S.W.2d at 956. Because Armendariz entered a not guilty plea and because the cocaine was the only evidence to support the State's case, the introduction of that evidence created harmful error. *See* Tex.R.App. P. 44.2; *Villalobos v. State*, 999 S.W.2d 132, 136–37 (Tex.App.— El Paso 1999, no pet.). Armendariz's conviction is therefore reversed and this case remanded to the trial court for proceedings consistent with this opinion.