Thomas Eric **BROTHER,**
Jr., Appellant,

v.

The **STATE** of Texas, State.

No. 2–01–193–CR.

Court of Appeals of Texas,
Fort Worth.

Aug. 8, 2002.

J. Don Carter and Earl R. Waddell, III, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney and Charles M. Mallin, Tanya S. Dohoney, Soraya Choudhry, and Sherry Whelchel, Assistant Criminal District Attorneys, Fort Worth, for The State.

Panel B: DAY, LIVINGSTON, and GARDNER, JJ.

### OPINION

SAM J. DAY, Justice.

Thomas Eric Brother, Jr. appeals from his conviction for driving while intoxicated (DWI). In four points on appeal, appellant complains that the trial court erred by denying his motion to suppress because the arresting officer had no authority to make a *Terry*[1] stop to investigate whether appellant was driving while intoxicated, no authority to make a warrantless arrest, and no authority to stop or arrest appellant outside the City of Hurst. We affirm.

### Background Facts

Around midnight on October 19, 2000, Debbie Spencer was driving herself and four coworkers home from their work at American Airlines. As they traveled, a green Saturn came up behind Spencer's truck so fast that she had to move to the left lane to allow the Saturn to pass. Spencer testified that the Saturn was "on top of [her] truck," bumper to bumper, and

---

1. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20    L.Ed.2d 889 (1968).

too close. She and her companions discussed its odd driving.

After the Saturn passed, Spencer returned to the right-hand lane, behind the Saturn. Then she noticed that there was another car ahead of the Saturn, which did not move out of the Saturn's way. The Saturn also ran up on the other car's bumper and then slowed down to about fifty miles per hour rather quickly, forcing Spencer to also slow down. Spencer then passed the Saturn, intending to leave it behind. But after she and her coworkers discussed what they had observed, Spencer decided to slow down and watch the Saturn because she was uncomfortable with the way it was being driven.

Once again, the Saturn passed Spencer's truck. As Spencer continued to watch the Saturn, she noticed that it was weaving, first in and out of a single lane, then further and further out until it eventually cut across all three lanes of traffic. At this point, Spencer called 911. On the 911 tape, Spencer informed the operator that appellant's vehicle was "all over the road." Spencer explained that she saw appellant make various lane changes going from the far right-hand lane of the three-lane road all the way over to the shoulder on the other side and then return to the right-hand lane. Appellant never used his turn signal, even though other cars were in the vicinity.

The 911 dispatcher contacted Hurst police officer J.D. Williams, a sixteen-year veteran, and told him that a driver calling on a cell phone was following what she thought could be an intoxicated driver on Highway 121. Based on the information that the dispatcher provided, Williams concluded that "it sounded like a possible intoxicated driver." Spencer stayed in constant contact with the dispatcher, and the dispatcher updated Williams with the information that Spencer provided as the call progressed. Spencer also gave the dispatcher the license plate number of the Saturn, which the dispatcher conveyed to Williams.

The dispatcher told Spencer to turn on her emergency flashers so that the police could find her easily. Williams saw the flashers on Spencer's truck pretty quickly, just after he had spotted the Saturn. Williams pulled in between Spencer's truck and the Saturn, followed the Saturn briefly, verified its driver's license plate number, and then turned on his overhead lights. Williams did not see appellant speeding or driving erratically. After Williams activated his overhead lights, appellant pulled over and stopped very slowly, as if he "let off the gas and then coasted to a stop" from about 40 miles per hour.

Williams approached the Saturn and noticed that appellant, the driver, was slow in his movements. Appellant fumbled through several cards before ultimately finding his driver's license. His eyes were a little glassy, his speech was a little slurred, and he smelled of alcohol. Williams gave appellant several field sobriety tests, decided that appellant was intoxicated, and arrested him for DWI.

As Williams was making the stop, the dispatcher told Spencer to stay back. Spencer pulled over to the side of the road behind the patrol car, the dispatcher told her to wait, and Spencer ultimately spoke with an officer after appellant was pulled over. The officer took the names and driver's license information of Spencer and her passengers and told them that they would be contacted.

### Standard of Review

Where, as here, the facts related to a trial court's ruling on a motion to suppress are undisputed, we conduct a de

novo review of the ruling. *See Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim. App.2000) (stating that appellate court reviews de novo the trial court's application of the law of search and seizure to the facts of a case); *Bachick v. State,* 30 S.W.3d 549, 551 (Tex.App.-Fort Worth 2000, pet. ref'd) (same). We view the evidence in the light most favorable to the trial court's ruling, and we may not disturb supported findings of fact absent an abuse of discretion. *State v. Ballard,* 987 S.W.2d 889, 891 (Tex.Crim.App.1999). Misapplication of the law to the facts of a case is a per se abuse of discretion. *Id.* at 893.

### *Terry* Stop

Appellant sought to suppress all of Williams's testimony and the evidence he obtained after the stop of appellant's car. After a hearing, the trial court found, based on the totality of the circumstances, that Williams "had the right to make the stop based on the information that was relayed to him." In his fourth point, appellant contends that the stop was unlawful because Williams had no reasonable suspicion to detain him.

A police officer may briefly detain a person for investigative purposes if, under the totality of the circumstances, the officer has reasonable suspicion supported by articulable facts that the person detained is, has been, or soon will be engaged in criminal activity. *Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1880; *Woods v. State,* 956 S.W.2d 33, 35, 38 (Tex.Crim.App.1997). Whether a detention is reasonable under the circumstances turns upon the content and reliability of the information possessed by the officer. *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990); *State v. Sailo,* 910 S.W.2d 184, 188 (Tex.App.-Fort Worth 1995, pet. ref'd).

The information provoking an officer's suspicions need not be based on his own personal observations, but may be based on an informant's tip that bears sufficient indicia of reliability to justify an investigative detention. *Johnson v. State,* 32 S.W.3d 294, 297 (Tex.App.-San Antonio 2000, pet. ref'd). Where the reliability of the information is increased, less corroboration is necessary. *State v. Stolte,* 991 S.W.2d 336, 341 (Tex.App.-Fort Worth 1999, no pet.). A detailed description of the wrongdoing, along with a statement that the event was observed firsthand, entitles an informant's tip to greater weight. *Illinois v. Gates,* 462 U.S. 213, 234, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983). A tip also deserves great weight if the person puts herself in a position to be held accountable for her intervention. *Stolte,* 991 S.W.2d at 341. Furthermore, a person who is not connected with law enforcement or is not a paid informant is considered inherently trustworthy when she advises the police that she suspects criminal activity has occurred or is occurring. *Id.; Sailo,* 910 S.W.2d at 188.

Appellant points out that Williams did not observe him weaving, speeding, or driving erratically and asserts that Williams did not know any facts as a result of Spencer's 911 call that would have distinguished appellant from any other ordinary driver and thereby justified the stop. Appellant further contends that the 911 dispatcher did not give Williams any information that would indicate that Spencer's information was reliable.

Even though Williams did not personally observe appellant speeding or driving in an erratic manner, Williams did have sufficient information to warrant the investigative detention. Spencer specifically explained to the 911 dispatcher why she believed appellant might be driving while intoxicated. She also described appel-

lant's car and gave the dispatcher his driver's license plate number. Based on this information, the dispatcher contacted Williams. The three stayed in constant contact until Williams pulled appellant over, and the dispatcher updated Williams with the information Spencer provided as the call progressed. Williams also corroborated Spencer's information by verifying appellant's driver's license plate number before initiating the stop. Viewing this evidence in the light most favorable to the trial court's ruling, we hold that the trial court properly applied the law in concluding, based on the totality of the circumstances, that the stop of appellant's vehicle was valid. *See Stolte*, 991 S.W.2d at 339, 342 (holding that police officer had reasonable suspicion to detain driver suspected of DWI, even though he did not observe erratic driving and dispatcher only advised officer that a cell phone caller had reported a suspected DWI; caller had given suspect's license plate number and a specific description of the vehicle, had continually updated dispatcher on the location of suspect's vehicle, and had pulled in behind patrol car after stop and waited to be contacted by an officer). We overrule appellant's fourth issue.

### Initial Stop Not an Arrest

In his first point, appellant contends that Williams's initial traffic stop of appellant's car was an arrest because Williams immediately approached his car and appellant thus could not have reasonably believed he was free to leave. He asserts that Williams did not have probable cause to arrest him at that point, so the "arrest," i.e., the stop, was an unlawful warrantless arrest.

■ A person is arrested when he has been actually placed under restraint or taken into custody. Tex.Code Crim. Proc. Ann. art. 15.22 (Vernon 1977). The initial stop of appellant was an investigative detention, not an arrest. A police officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even if the officer lacks probable cause. *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884; *Woods*, 956 S.W.2d at 35. We have held that Williams's investigative detention of appellant was reasonable under the circumstances of this case; therefore, no probable cause was required for the initial stop.

■ The cases on which appellant relies to support his position that the stop was not simply an investigative detention are inapposite from his situation. Williams did not block appellant's car with a police car and order appellant from his vehicle at gunpoint, *see Amores v. State*, 816 S.W.2d 407, 410 (Tex.Crim.App.1991), did not hand-cuff appellant and force him to lie on the ground, *see Burkes v. State*, 830 S.W.2d 922, 923 (Tex.Crim.App.1991), or seize appellant by the throat. *See Guzman v. State*, 955 S.W.2d 85, 86 & n. 2 (Tex.Crim.App.1997). Williams did not, as appellant asserts, remove appellant from his vehicle. Instead, he asked appellant to step out. As part of a temporary detention, an officer may ask an individual to step out of his automobile. *Bachick*, 30 S.W.3d at 551.

There is also no record support for appellant's contention that he was hand-cuffed and placed in a patrol car immediately following the field sobriety tests. We have found no evidence that hand-cuffing occurred before appellant's arrest or that it occurred at all. Williams did not arrest appellant until after he observed appellant's glassy eyes and slow movements, smelled alcohol on appellant and in his car, and decided, based on appellant's performance of field sobriety tests, that

appellant was intoxicated. Appellant does not contend that Williams lacked probable cause to arrest him at that point. We overrule point one.

### Williams's Official Jurisdiction

Williams was a Hurst police officer, but he stopped and arrested appellant in North Richland Hills. In his second and third points, Appellant contends that Williams's official jurisdiction was limited to the City of Hurst, that Williams had no authority to stop or arrest him outside of Williams's official jurisdiction, and that the stop and arrest in North Richland Hills were therefore invalid.

A police officer in a type A general-law municipality[2] like Hurst has the powers, rights, duties, and jurisdiction granted to a peace officer by the code of criminal procedure. TEX. LOC. GOV'T CODE ANN. § 341.001(e) (Vernon 1999). The code of criminal procedure charges a peace officer with the duty to preserve the peace within his jurisdiction and to use all lawful means to effect this purpose. TEX. CODE CRIM. PROC. ANN. art. 2.13(a) (Vernon Supp. 2002). Except for some statutory exceptions related to arrests,[3] both the common and statutory law limit a peace officer's authority to his own geographic jurisdiction. *See Angel v. State*, 740 S.W.2d 727, 734 (Tex.Crim.App.1987) (holding that jurisdiction is a restriction on the geographic scope of a city police officer's power, rights, and authority).

The code of criminal procedure does not define a peace officer's jurisdiction. Both the court of criminal appeals and many intermediate appellate courts have held, however, that the jurisdiction of a police officer from a type A municipality is county-wide. *See Chavez v. State*, 9 S.W.3d 817, 827 & n. 5 (Tex.Crim.App.2000) (Holland, J., dissenting); *Perkins v. State*, 812 S.W.2d 326, 327 (Tex.Crim.App.1991); *Angel*, 740 S.W.2d at 736; *Reichaert v. State*, 830 S.W.2d 348, 351 (Tex.App.-San Antonio 1992, pet. ref'd); *Finley v. State*, 809 S.W.2d 909, 913 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd); *Britt v. State*, 768 S.W.2d 514, 515 (Tex.App.-Fort Worth 1989, no pet.); *see also* Op. Tex. Att'y Gen. No. LO–98–077 (1998); 40 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 9.15 (2nd ed.2001).

Many of these decisions were based on former revised civil statutes 998 and 999 and former sections 341.001(e) and 341.021(e) of the local government code, which provided that city police officers had the same jurisdiction as city marshals who, in turn, had the same jurisdiction as a sheriff.[4] *Angel*, 740 S.W.2d at 733; *Reichaert*, 830 S.W.2d at 351; *Finley*, 809 S.W.2d at 913; *Britt*, 768 S.W.2d at 515. A sheriff is "a conservator of the peace in his county." TEX. CODE CRIM. PROC. ANN. art. 2.17 (Vernon 1977). Thus, the courts concluded that a type A municipality police

---

**2.** Appellant asserts that Hurst is a type A general-law municipality, and the State does not contest this assertion. Accordingly, for purposes of this opinion, we will assume that Hurst is a type A general-law municipality.

**3.** *See, e.g.*, TEX. CODE CRIM. PROC. ANN. art. 14.03(d), (g) (Vernon Supp.2002) (providing that a peace officer who is outside his jurisdiction may arrest, without warrant, a person who commits certain offenses within the officer's presence or view).

**4.** *See* Act of May 25, 1967, 60th Leg., R.S., ch. 523, §§ 2–3, 1967 Tex. Gen. Laws 1171, 1171–72, *amended by* Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 1, 1987 Tex. Gen. Laws 707, 1136–37, *amended by* Act of May 28, 1995, 74th Leg., R.S., ch. 829, §§ 2–3, 1995 Tex. Gen. Laws 4213, 4214 (current version at TEX. LOC. GOV'T CODE ANN. §§ 341.001(e), 341.021(e) (Vernon 1999)).

officer's jurisdiction was county-wide. *Angel*, 740 S.W.2d at 733, 736; *Reichaert*, 830 S.W.2d at 351; *Finley*, 809 S.W.2d at 913; *Britt*, 768 S.W.2d at 515.

The current versions of these statutes do not specifically equate a city police officer's jurisdiction with that of a sheriff. TEX. LOC. GOV'T CODE ANN. §§ 341.001(e), 341.021(e) (providing only that police officers and marshals of type A general-law municipalities have same jurisdiction granted peace officers by code of criminal procedure). Nonetheless, nothing in the current statutes limits the jurisdiction afforded city police officers to less than a county-wide area. Given the large body of case law holding that a city police officer's jurisdiction is county-wide, the legislature could certainly have chosen to limit that jurisdiction to a lesser geographical area if it had wanted to. *See Miller v. State*, 33 S.W.3d 257, 260 (Tex.Crim.App.2000) (noting that, in construing a statute, it is presumed that the legislature is aware of case law affecting or relating to the statute).

We decline to follow our sister court's holding that a city police officer's jurisdiction is now restricted to city limits—the pre-statutory geographic jurisdictional area recognized under the common law—simply because the current version of the statutes no longer defines the geographical scope of a city police officer's jurisdiction. *See Gerron v. State*, 57 S.W.3d 568, 570–71 (Tex.App.-Waco 2001, no pet.); *see also Armendariz v. State*, 63 S.W.3d 572, 576 (Tex.App.-El Paso 2001, pet. granted) (holding, without analysis, that city police officer's jurisdiction did not extend beyond city limits); *Yeager v. State*, 23 S.W.3d 566, 570 (Tex.App.-Waco 2000, pet. granted) (holding that jurisdiction of a type B municipality police officer is controlled by common-law geographical limitation of city limits).[5] Nothing in the legislative history of the amendments to sections 341.001(e) and 341.021(e) indicates a legislative intent to limit city police officers' jurisdiction to a geographical area less than county-wide.[6] To the contrary, the House Research Organization bill analysis explained that the purpose of the legislation was to broaden city police officers' authority to make warrantless arrests. The object of the legislation was to amend article 14.03 of the code of criminal procedure to allow peace officers to preserve the peace within the entire State of Texas, not just their jurisdictions, by allowing them to arrest, outside their jurisdictions and without warrant, persons who committed offenses within the officers' presence or view. *See* HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, Tex. H.B. 2614, 74th Leg., R.S. (1995); BILL FILE, Tex. H.B. 2614 (1995), *available at http://www.capitol.state.tx.us/tlo/billnbr.htm*. The corresponding amendments to sections 341.001(e) and 341.021(e) of the local government code were intended to give marshals and police officers the same power and jurisdiction as peace officers under the

---

5. Our opinion in *Bachick* should not be construed as holding that a city police officer's geographical jurisdiction is limited to city limits. In that case, our focus was not on the extent of a police officer's jurisdiction, but on the exclusionary rule and on whether an officer who makes a valid traffic stop for one offense may investigate a second if, during the course of the stop, the officer develops a reasonable suspicion that the second offense has been committed. *See* 30 S.W.3d at 551–53.

6. Ordinarily, we construe a statute according to its plain textual meaning without resort to extratextual sources. *See Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). But where, as here, the statute is ambiguous, we resort to extratextual sources such as the object sought to be attained by the legislation, legislative history, and former statutory provisions. *See State v. Medrano*, 67 S.W.3d 892, 900 (Tex.Crim.App.2002).

code of criminal procedure to make such warrantless arrests. *See* HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, Tex. H.B. 2614; BILL FILE, Tex. H.B. 2614.[7]

Given the object sought to be attained by the amendments to article 14.03 and sections 341.001(e) and 341.021(e), the legislative history, and the former statutory provisions, we hold that a type A municipality police officer's jurisdiction remains at least county-wide. Both Hurst and North Richland Hills are in Tarrant County. Thus, Williams's stop and arrest of appellant were within Williams's jurisdiction, and the trial court did not err by denying appellant's motion to suppress. We overrule appellant's second and third points and affirm the trial court's judgment.

---

**7.** We are aware that the scope of a peace officer's jurisdiction must be found in a statute or is controlled by the common law. *Angel,* 740 S.W.2d at 732; *Dominguez v. State,* 924 S.W.2d 950, 954(Tex.App.-El Paso 1996, no pet.). Here, a significant body of common law has been developed holding that a city police officer's jurisdiction is county-wide. While this common law is based largely on the former versions of the statutes at issue, there is not, as we have discussed, any indica-tion that the legislature intended the amendments to the statutes to abrogate this well-established case law. Accordingly, we conclude that *Angel* and its progeny remain valid. *See Enos v. State,* 889 S.W.2d 303, 305 (Tex. Crim.App.1994) (holding that statute must not be interpreted as abrogating common-law principle unless such overruling is clearly indicated, either by express terms of statute or by necessary implication from language used).