IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1820-02






THOMAS ERIC BROTHER, JR. 



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SECOND COURT OF APPEALS


TARRANT COUNTY





 Holcomb, J., delivered the opinion of the Court, in which Keller, P.J., 
and Meyers, Price, Johnson, Keasler, Hervey, and Cochran, JJ., joined. 
Womack, J., joined as to part III. 


O P I N I O N 
 


 Appellant was charged with driving while intoxicated by misdemeanor information. 
He filed a pre-trial motion to suppress evidence, claiming, inter alia, that (1) the officer did
not have reasonable suspicion to stop his vehicle for DWI and (2) the stop was prohibited by
Article 14.03 of the Texas Code of Criminal Procedure. After a hearing, the trial court
denied appellant's motion to suppress. Appellant pleaded guilty to the offense but appealed
the trial court's denial of his motion to suppress. The court of appeals affirmed the trial
court's ruling. Brother v. State, 85 S.W.3d 377, 385 (Tex. App.--Fort Worth 2002). We
granted review to determine whether the court of appeals erred in affirming the trial court's
implicit conclusion that the officer had reasonable suspicion to stop appellant's car and that
the officer had statutory authority to make the stop outside his geographical jurisdiction, the
City of Hurst. We affirm the judgment of the court of appeals. 

Analysis and Holdings 

I. Fourth Amendment 

 Based on the following facts, the court of appeals concluded that the arresting officer
had reasonable suspicion to stop appellant's car. Appellant's erratic driving was reported by
a citizen who called "911" on her cell phone after she witnessed appellant speeding,
tailgating, and weaving across several lanes of traffic. The citizen, who continued to monitor
appellant's driving by following appellant in her car, kept in contact with the "911"
dispatcher until the arresting officer stopped appellant. The citizen testified at the
suppression hearing that the dispatcher instructed her to follow appellant and activate her
hazard lights so that the responding officer would be able to identify the correct vehicle. The
citizen remained at the scene after the stop, and she provided the officer with her contact
information. The court of appeals concluded that, although the officer did not witness the
erratic driving, the detailed information he received from the "911" dispatcher was sufficient
to warrant the traffic stop. Brother v. State, 85 S.W.3d at 381-82. 

 The crux of appellant's complaint is that the officer did not personally observe any
activity that would give rise to a reasonable suspicion that DWI was afoot. However, the
record reflects that the officer received facts of appellant's erratic driving from the dispatcher
before he stopped appellant's car. Specifically, the officer testified at the suppression hearing
that "[d]ispatch advised me a caller was on 911 from a cell phone, and was following what
[she] thought could be an intoxicated driver . . . . Dispatch stayed on the line with the caller
and was updating me as the call progressed . . . . From what dispatch was describing, it
sounded like a possible intoxicated driver." The officer further testified that he knew which
car to stop because the dispatcher had provided him with the license plate number and that the
citizen had been instructed to follow behind appellant's car with her hazard lights on. Thus,
based on this testimony and the following analysis, we hold that the officer was apprised of
sufficient facts by which to conclude that criminal activity, i.e., DWI, was afoot. (1) 

 Under the Fourth Amendment, a temporary detention is justified when the detaining
officer has specific articulable facts which, taken together with rational inferences from those
facts, lead the officer to conclude that the person detained is, has been, or soon will be
engaged in criminal activity. Terry v. Ohio, 392 U.S. 1, 30 (1968). These facts must amount
to more than a mere hunch or suspicion. Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim.
App. 1997).

 The factual basis for stopping a vehicle need not arise from the officer's personal
observation, but may be supplied by information acquired from another person. Adams v.
Williams, 407 U.S. 143, 147 (1972). For example, in Armendariz v. State, we held that a stop
based on facts observed by an undercover officer and transmitted by radio to a deputy sheriff
did not violate the Fourth Amendment. 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert.
denied, 541 U.S. 974 (2004). 

 It has been widely recognized that the reliability of a citizen-informant is generally
shown by the very nature of the circumstances under which the incriminating information
became known to him or her. State v. Markus, 478 N.W.2d 405 (Iowa Ct. App 1991). (2) 

 In Pipkin v. State, the Fort Worth court of appeals held that a stop based on facts
relayed to law enforcement by a citizen cell phone caller were sufficiently corroborated and
the stop was justified, even though the officer did not personally witness any erratic driving. 
114 S.W.3d 649, 654 (Tex. App.--Fort Worth 2003, no pet.). The citizen-witness testified
that he called "911" because Pipkin was driving thirty miles per hour under the posted speed
limit; and as the caller drove by Pipkin's car, the caller saw Pipkin smoking a crack pipe. The
Fort Worth Court concluded that the stop was reasonable because the caller was a
disinterested private citizen who provided law enforcement with a detailed description of
Pipkin's car and location and made himself accountable for his intervention by providing his
contact information to the dispatcher. Id. at 655-56. Looking to its own precedent, the Fort
Worth court held that the facts relayed to the dispatcher, which detailed Pipkin's driving and
described his criminal behavior, in addition to the description and location of the vehicle,
provided adequate corroboration for the officer to have reasonably concluded that the
information given to him was reliable and a temporary detention was justified. See id. at 655-56. (3) 

 Here, the citizen gave a detailed description of appellant's car and location, as well as
his erratic driving. As requested by the "911" dispatcher, the citizen followed behind the
suspect with her emergency lights on, which assisted the officer in identifying the proper
vehicle. Throughout the incident, the citizen kept in contact with the "911" dispatcher, and
she remained at the scene after appellant's car was stopped by police. There, she provided
police with her contact information. She later appeared as a witness at the suppression
hearing, and she testified about her firsthand observations. Relying on the information
supplied by the citizen, the officer testified he was able to locate and identify appellant's
vehicle. And, as noted, the officer testified that the facts relayed to him through the "911"
dispatcher caused him to believe that appellant was driving while intoxicated. 

 Appellant's argument that an officer must personally witness facts giving rise to
criminal activity, is against the great weight of authority. (4) The federal courts and our lower
Texas courts have consistently held that a stop based on facts supplied by a citizen-eyewitness, which are adequately corroborated by the arresting officer, (5) do not run afoul of
the Fourth Amendment. 

 Moreover, appellant's argument is simply unsound. To require officers who are
apprised of detailed facts from citizen-eyewitnesses to observe suspects and wait until
additional suspicious acts are committed, would be foolish and contrary to the balance of
interests struck in Terry and its progeny. See Terry, 392 U.S. at 29 ("The sole justification
of the search . . . is the protection of the police officer and others nearby. . . ."). (6) 
Accordingly, we hold that the court of appeals did not err in concluding that, under the totality
of the circumstances, the stop was reasonable under the Fourth Amendment. See Alabama
v. White, 496 U.S. at 331; Pipkin,114 S.W.3d at 654. 

II. Article 14.03(g)

 Article 14.03 of the Texas Code of Criminal Procedure provides that city police
officers may not stop and arrest persons for traffic violations committed outside the officers'
geographical jurisdiction. Tex. Code Crim. Proc. Ann. art. 14.03(g); State v. Kurtz, 152
S.W.3d 72, 77 (Tex. Crim. App. 2004). Appellant was stopped outside the City of Hurst but
within Tarrant County. The arresting officer was a licensed peace officer of the City of Hurst. 
See art. 14.03(g) (defining officers who may and may not stop persons for traffic offenses
committed within their view but outside their jurisdiction). 

 Construing Article 14.03 and the applicable common law decisions, the court of
appeals held that the stop was not prohibited because "a city officer's geographical
jurisdiction is county-wide." See Brother v. State, 85 S.W.3d at 384-85. Although the court
of appeals reached the right result, the focus of its conclusion was misdirected. That is, it was
not necessary for the court of appeals to determine whether the officer had jurisdiction to stop
appellant for mere traffic offenses, because subsection (g) provides that an officer outside his
jurisdiction may stop a person who is driving while intoxicated. See Art. 14.03 (g) ("A peace
officer...who is licensed under the Government Code, and is outside of [his] jurisdiction may
arrest without a warrant a person who commits any offense within the officer's presence or
view, except that an officer outside the officer's jurisdiction may arrest a person for a
violation of [the Transportation Code] only if [he is a Ranger or a DPS officer].") (emphasis
added). 

 Appellant was stopped outside the arresting officer's jurisdiction based on the officer's
probable cause that DWI was underway, and the officer so testified. The officer was resolute
that the caller had provided facts which led him to believe that DWI--not traffic
offenses--was afoot. Therefore, Article 14.03(g) did not prohibit the stop outside the
officer's jurisdiction. See Kurtz, 152 S.W.3d at 79.

III. Article 14.03(d) 

 Moreover, Article 14.03(d) further authorized the stop. Subsection (d) provides that
an officer may make an extra-jurisdictional stop for felony offenses, disorderly conduct
offenses under Chapter 42, intoxication offenses under Chapter 49, and breaches of the peace
that are committed within the officer's view. See Art. 14.03(d). Based on the officer's
testimony here, the trial court could have reasonably found that an intoxication offense was
taking place. Therefore, the stop was authorized by both subsections (d) and (g). Compare
State v. Kurtz, 152 S.W.3d at 78-79 (extra-jurisdictional stop based on only traffic offenses
could not be upheld as stop based on breach of the peace because record facts did not support
such a stop). IV. Conclusion

 We affirm the judgment of the court of appeals. 

DELIVERED: June 29, 2005.

PUBLISH

 

1. Appellant seems to argue that the stop was unlawful because, although the dispatcher
may have received specific facts from the citizen, the officer did not receive any facts from the
dispatcher that would provide a legitimate basis for the stop. Specifically, appellant complains
that, "[t]here was no specific conduct communicated to [the officer] before he stopped
Appellant's car" and "The court of appeals erroneously cites the facts known to the police
dispatcher and not facts known by or communicated to [the officer]." Although there was no
testimony at the suppression hearing that the dispatcher relayed any specific facts about
appellant's driving to the officer, the audiotape of the call from the dispatcher to the officer was
admitted into evidence and played in open court. We have reviewed the tape and find that the
dispatcher relayed specific facts about appellant's driving to the officer. Moreover, the detail of
the dispatcher's information leads us to conclude that, not only did the officer have reasonable
suspicion to stop appellant's car, the officer had probable cause to make the arrest for DWI. 
2. See also, Chambers v. Maroney, 399 U.S. 42, 46-47 (1970); Jaben v. United States, 381
U.S. 214, 224 (1965); Webb v. State, 760 S.W.2d 263, 274-75 (Tex. Crim. App. 1988) (holding
that information from citizen-witness was sufficiently reliable under totality of the circumstances,
even though officer did not obtain witness's name); United States v. Sierra-Hernandez, 581 F.2d
760, 763 & n.1 (9th Cir. 1978) (although information supplied by citizen informant is not per se
reliable, such information should be given serious attention and great weight); State v. Paszek,
184 N.W.2d 836, 842-43 (1971) (distinguishing paid informants from ordinary citizen
informants). See 2 LaFave, Search and Seizure, § 3.4 (3 ed 1996).
3. Citing State v. Stolte 991 S.W.2d 336, 341 (Tex. App.--Fort Worth 1999, no pet). In
Stolte, detailed information from an unidentified citizen cell phone caller, alleging erratic driving
and identifying the suspect's car and location, was relayed to the arresting officer by police
dispatch. The Fort Worth court reasoned that, in addition to the detailed information provided,
the tip bore sufficient indicia of reliability because the witness was a concerned citizen rather
than a paid government informant, and the caller permitted himself to be identified after the stop. 
See id. at 340-43. 
4. United States v. Wheat, 278 F.3d 722, 724 (8th Cir. 2001), cert. denied, 537 U.S. 850
(2002); Bilyeu v. State, 136 S.W.3d 691, 696-97 (Tex. App.--Texarkana 2004); Reesing v. State,
140 S.W.3d 732, 737 (Tex. App.--Austin 2004, pet. ref'd); Hawes v. State, 125 S.W.3d 535,
538-540 (Tex. App.--Houston [1st Dist.] 2002, no pet.) (stop upheld where unidentified citizen
tipster, who approached officer on street but was never identified, saw driver asleep at wheel of
car at green light; tip was then corroborated by the slow operation of the car); State v. Fudge, 42
S.W.3d 226, 232 (Tex. App.--Austin 2001, no pet.) (holding reasonable suspicion existed to
support detention based solely on cab driver's unsolicited personal report to officer about erratic
driving); State v. Garcia, 25 S.W.3d 908, 913-14 (Tex. App.--Houston [14th Dist.] 2000, no
pet.) (holding that reliability of the informant's tip, combined with the officer's subsequent
corroboration of details, provided reasonable suspicion for investigative detention); Hime v.
State, 998 S.W.2d 893, 895-96 (Tex. App.--Houston [14th Dist.] 1999, pet. ref'd) (stop for DWI
investigation was reasonable based on tip from eyewitness who provided name to police); Glover
v. State, 870 S.W.2d 198, 199-200 (Tex. App.--Fort Worth 1994, pet. ref'd) (upholding stop
based solely on facts supplied by unidentified EMS personnel); Stolte, 991 S.W.2d at 341; Sailo,
910 S.W.2d at 188. Cf. Johnson v. State, 146 S.W.3d 719 (Tex. App.--Texarkana 2004, no pet.)
(holding that stop based solely on anonymous tip with no corroboration by the officer that
indicated criminal activity was underway was insufficient, even where the officer testified that
the stop took place in high crime area); Davis v. State, 989 S.W.2d 859 (Tex. App.--Austin
1999, pet. ref'd) (holding specific facts relating to description of suspects, the vehicle and its
whereabouts, were insufficient where allegation of unknown telephone caller included reckless
driving and "possible" possession of marijuana); Stewart v. State, 22 S.W.3d 646 (Tex.
App.--Austin 2000, pet. ref'd) (holding that stop unjustified on basis of telephone caller, who
was never identified, alleging that driver of green Camero, in convenience store parking lot, fell
over before getting into his car). See also, Note, Search and Seizure: Law Enforcement Officers'
Ability to Conduct Investigative Traffic Stops Based Upon An Anonymous Tip Alleging
Dangerous Driving When the Officers Do Not Personally Observe Any Traffic Violations, 34 U.
Mem. L. Rev. 173 (2003).
5. Corroboration does not mean that the officer must personally observe the conduct that
causes him to reasonably suspect that a crime is being, has been, or is about to be committed.
Adams v. Williams, 407 U.S. at 147; Pipkin, 114 S.W.3d at 654. Rather, corroboration refers to
whether the police officer, in light of the circumstances, confirms enough facts to reasonably
conclude that the information given to him is reliable and a temporary detention is thus justified.
Alabama v. White, 496 U.S. 325, 330-31 (1990); Pipkin, 114 S.W.3d at 654. 
6. See Adams v. Williams, 407 U.S. 143, 145-46 (1972) (the Fourth Amendment does not
require police officers "to simply shrug [their] shoulders and allow a crime to occur or a criminal
to escape"); Terry, 392 U.S. at 20-21, 27 (balancing the government's interest against the degree
of intrusion upon individual rights and concluding that the government's interest in crime
prevention and detection outweighed the limited intrusion of a brief investigative stop upon an
individual's personal liberty); Stolte, 991 S.W.2d at 342 & 343 n.4 ("it would be wholly
unreasonable, under these facts, to require a police officer to 'corroborate' an informant's tip by
waiting for the suspect to swerve out of his lane or otherwise jeopardize the safety of other
drivers"); Slater, 986 P.2d at 1050 (when balancing private and public rights in DWI prosecution,
"the equation must be weighed in favor of protecting the public and removing the danger").