

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00045-CR

_____

CHRISTOPHER CHARLES MEADOWS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law #1
Gregg County, Texas
Trial Court No. 2010-0592

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

City of Kilgore Police Officer Joseph Harrison saw a vehicle driven by Christopher Charles Meadows turn off of Stone Road and use a roadway that the officer believed was a private driveway (the Roadway) to reach Utzman Street. Believing that Meadows failed to stop in the Roadway and thus committed a traffic violation, Harrison turned on his overhead flashing lights to initiate a traffic stop. Despite the flashing lights behind him, Meadows failed to stop, but continued to drive until he reached his nearby home. After seeing signs that Harrison believed indicated that Meadows was intoxicated, Harrison placed Meadows under arrest. Meadows refused to submit to a breath test, so Harrison obtained a search warrant for a sample of Meadows' blood to be used in testing for alcohol levels. Because the hospital in Kilgore was unavailable to him, Harrison transported Meadows to a hospital in nearby Longview (also in Gregg County) where Meadows' blood was drawn. Tests on that blood revealed a blood-alcohol level consistent with intoxication, and he was charged by information with a second offense driving while intoxicated (DWI) and with fleeing from a police officer. After the trial court denied his motion to suppress the evidence gained from the stop and search, Meadows pled guilty to both charges.

Meadows appeals from his conviction for fleeing, arguing that the trial court erred by failing to grant his motion to suppress because: (1) the officer lacked reasonable suspicion to stop him, as the Roadway was a public road; (2) the officer lacked reasonable suspicion to stop him, as

2

Meadows could have stopped in the Roadway; and (3) the blood draw, being a search, exceeded the officer's geographic jurisdiction.

We affirm the judgment of the trial court because: (1) the officer had reasonable suspicion to believe the Roadway was a parking lot, driveway, or private road; (2) the officer had reasonable suspicion to believe that Meadows failed to stop while traversing the Roadway; and (3) a city police officer of a home-rule city may execute a valid search warrant anywhere within the county where he is an officer.

**Background Facts**

In the early morning hours of February 7, 2010, Kilgore Police Officer Joseph Harrison observed two vehicles parked in a church parking lot; although the circumstances seemed somewhat suspicious to him, he did not stop to make inquiry of the drivers because the church was just outside the city limits of Kilgore. He then saw the two vehicles leave the parking lot and he followed them. Harrison lost contact with one of the vehicles, but continued to follow the remaining vehicle, a truck driven by Meadows.

As Harrison followed Meadows' truck, he saw it turn off Stone Road onto the Roadway, (which Harrison believed to be a private drive). The Roadway ran between Stone Road and Utzman Street, and it provided access to a car wash and a bank's automatic teller machine (ATM). As Harrison continued on Stone Road, he briefly lost sight of Meadows' truck, but after reasoning that no one would likely wash a car at 1:00 a.m., Harrison turned around and followed Meadows

3

down the "driveway" (the Roadway). Upon catching up to Meadows' truck, the officer illuminated his overhead lights and tried to stop Meadows for violating Section 545.423 of the Texas Transportation Code, which prohibits drivers from driving through a private driveway, parking lot, or business or residential entrance without stopping the vehicle. TEX. TRANSP. CODE ANN. § 525.423 (West 2011). Meadows ignored the lights on the police car and failed to stop, continuing to drive until he reached his home, about 0.4 miles away. Harrison arrested Meadows for fleeing a police officer. During this arrest, although Harrison observed signs of possible intoxication (slurred speech, alcohol on breath, red/glassy eyes, unsteady on his feet), he did not conduct field-sobriety tests at that time; instead, he took Meadows to the Kilgore Police Department station. After Meadows refused to perform field-sobriety tests or provide a breath specimen, Harrison obtained a search warrant for a blood specimen. Harrison transported Meadows from the police station to Good Shepherd Medical Center in Longview, Texas, to obtain a blood sample (the test results of which showed elevated blood-alcohol levels).

Meadows was charged by information with DWI, second offense, and fleeing from a police officer. Meadows moved to suppress the evidence gained from the stop and search on the grounds that the traffic stop detention and blood draw were both unlawful. After the trial court refused to grant the suppression motion, Meadows pled guilty to both charges. On the DWI charge, Meadows was sentenced to one year's confinement, but was granted community supervision for a period of two years and was ordered to pay court costs. As conditions of his

4

community supervision, he was ordered to pay an $850.00 fine and serve one seventy-two-hour period in jail. On the fleeing charge, he was assessed a $350.00 fine and one year's confinement, these being likewise subject to community supervision for a period of one year.

**Standard of Review**

We review a trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review. *Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd); *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref'd). While we defer to the trial court on its determination of historical facts and credibility, we review its application of the law and determination on questions not turning on credibility de novo. *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Villarreal v. State*, 935 S.W.2d 134, 138 n.5 (Tex. Crim. App. 1996); *Graves*, 307 S.W.3d at 489. We also afford deference to a trial court's "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. In other words, we give almost total deference to the trial court in determining what the actual facts are, and then we review de novo whether those facts are sufficient to give rise to reasonable suspicion. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001) (determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal) (citing *Ornelas v. United States*, 517 U.S. 690 (1996)).

5

Since all the evidence is viewed in the light most favorable to the trial court's ruling, we are obligated to uphold the denial of Meadows' motion to suppress if it was supported by the record and was correct under any theory of law applicable to the case. *Carmouche*, 10 S.W.3d at 327–28; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

*The Officer Had Reasonable Suspicion to Believe the Roadway Was a Private Drive*

Officer Harrison stopped Meadows for driving through a private driveway without stopping. As part of his first point of error, Meadows argues that the trial court erred in denying his motion to suppress, because the Roadway in question was actually a part of Utzman Street, a public road, and therefore the officer pulled him over for an act that did not constitute a traffic offense. Meadows argues that because his actions did not amount to a traffic offense, the officer lacked reasonable suspicion to stop him.

A law enforcement officer may lawfully stop and detain a person for a traffic violation committed in the presence of the officer. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); *Zervos v. State*, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd). "A routine traffic stop resembles an investigative detention." *State v. Cardenas*, 36 S.W.3d 243, 246 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). The United States Supreme Court in *Terry v. Ohio* established the test for investigative detentions. *Terry* established a two-pronged test for investigative detentions. *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968). To determine the reasonableness of an investigative detention, the court must inquire: "(1) whether the officer's

action was justified at its inception; and, (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997); *see Terry*, 392 U.S. at 19–20.

Meadows challenges the first prong of the test. "Under the first prong, 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id.* (quoting *Terry*, 392 U.S. at 21). These facts must be more than a mere hunch or suspicion. *Id*. at 244. Whether the officer's suspicion was reasonable is evaluated based on "an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The specific, articulable facts, along with rational inferences from those facts, must allow the officer to reasonably conclude the person detained actually is, has been, or soon will be engaged in criminal activity. *United States v. Sokolow*, 490 U.S. 1, 10 (1989).

In a motion to suppress setting, the propriety of an arrest or detention need not be proven beyond a reasonable doubt. *See Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); *Lalande v. State*, 676 S.W.2d 115, 117–18, 117 n.4 (Tex. Crim. App. 1984). In the recent case of *York v. State*, the Texas Court of Criminal Appeals held that the State's standard of proof is "the one that applies to most constitutional suppression issues: preponderance of the evidence."[1] 342

---

[1] In *York*, the court noted that "[i]n at least one instance--the voluntariness of consent--the burden of proof is 'clear and convincing evidence.'" 342 S.W.3d at 543 n.85 (citations omitted).

S.W.3d 528, 543 (Tex. Crim. App. 2011) (citations and footnotes omitted). The court, however, cautioned that appellate courts should not defer to a police officer's legal conclusions. *Garcia*, 43 S.W.3d at 531. Since *Garcia*, several Texas courts of appeals have noted an officer's incorrect understanding of the law does not give rise to a reasonable suspicion. *Fowler v. State*, 266 S.W.3d 498 (Tex. App.—Fort Worth 2008, pet. ref'd); *Goudeau v. State*, 209 S.W.3d 713, 716 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998). The Third Circuit has explained this distinction succinctly as follows:

> [M]istakes of fact are rarely fatal to an officer's reasonable, articulable belief that an individual was violating a traffic ordinance at the time of a stop, many of our sister circuits have held that mistakes of law—even reasonable ones—can render a traffic stop "unreasonable" under the Fourth Amendment.

*United States v. Delfin–Colina*, 464 F.3d 392, 398 (3d Cir. 2006). We believe the Third Circuit's holding explains the distinction made by the Texas Court of Criminal Appeals in *Garcia*. *See Madden v. State*, 242 S.W.3d 504, 508 n.7 (Tex. Crim. App. 2007) (noting factual issue was not whether defendant was actually speeding, but whether officer had reasonable belief defendant was speeding).

The charge lodged against Meadows was not the violation of the Texas Transportation Code in crossing over a private driveway (in common vernacular, "corner cutting"), but fleeing from a police officer and DWI. Therefore, the question here is not whether Meadows actually violated the traffic law but, rather, the objective reasonableness of the officer's suspicion that

Meadows had violated it. *See id.* (noting factual issue not whether defendant was actually speeding, but whether officer had reasonable belief defendant was speeding). Specifically, based on the facts presented, does a correct interpretation of the law allow a police officer to reasonably suspect that the Roadway was a private drive, parking lot, or other private road?

Here, there is evidence that the Roadway was a public road.[2] Maps from internet sites Google and Planetware label the Roadway as "Utzman Street." There are several traffic control signs on the Roadway, including "no left turn," "one way," and "no right turn." Officer Harrison admitted that the signs appear to be "public – an actual official traffic-control sign," rather than signs that a private entity would erect. At the time of the stop, Harrison was unaware that the Roadway had traffic signs on it.

There is also evidence that the Roadway was a private road. Harrison testified that the Roadway was "not on our maps that we use in the police department as a street. It's just a driveway." However, nothing in the record indicates that Harrison had memorized or consulted

---

[2]Formal dedication of a roadway is only one means by which a roadway can become a public thoroughfare. There are other ways, including prescriptive easement, *Allen v. Keeling*, 613 S.W.2d 253, 254 (Tex. 1981), and implied dedication, *Lindner v. Hill*, 691 S.W.2d 590, 592 (Tex. 1985).

9

these police maps prior to the stop.[3] Harrison had personal experience with the Roadway in dispute because he had "used that ATM before."[4]

Obviously, reasonable minds could differ as to whether the Roadway was actually a public roadway or a private one. Considering the officer's prior experience in using the Roadway and the conflicting evidence which supports both the view that it was public and that it was private, we find that Harrison had reasonable suspicion to believe that the Roadway was a private drive. Therefore, we overrule this portion of Meadows' first point of error.

*The Officer Had Reasonable Suspicion to Believe that Meadows Failed to Stop While Traversing the Roadway*

As a part of his first point of error, Meadows contends that the trial court erred by denying his motion to suppress because the officer lacked reasonable suspicion that Meadows failed to stop while traversing the Roadway. Applying the standards discussed above (and assuming there was sufficient evidence for the officer to reasonably believe the Roadway to be a private drive), the issue is whether the facts presented in the record are sufficient to establish reasonable suspicion that Meadows failed to stop. *See Garcia*, 43 S.W.3d at 531.

---

[3]There is no sign on the Roadway labeling the known public streets at either end of the Roadway, and no "stop" or "yield" signs at either end of the Roadway. The surface of the Roadway is the same type and pattern as that of the bank's parking lot. However, there is no evidence in the record that Harrison was aware of, or that he considered, such evidence at the time of the stop.

[4]We note that Harrison testified that the presence of the ATM on the Roadway "did not enter [his] mind until" it was brought up at Meadows' license revocation hearing. However, Harrison was not testifying regarding the public or private nature of the Roadway, but rather, the initial reason he believed Meadows had turned onto the Roadway in the first place—"I figured he was going to wash his car."

10

When Meadows turned from Stone Road onto the Roadway, Harrison turned off his video camera and continued along Stone Road for a moment before making a U-turn and turning down the Roadway to follow Meadows. He saw that Meadows "had made it all the way to Utzman Road," so Harrison "got on it,"[5] and once again got behind Meadows and activated his overhead lights and video camera. Harrison testified that the lights and camera were turned back on at the point Meadows was turning from Utzman Street onto Parkview. He testified that he only lost sight of Meadows for "probably five or ten seconds," but he admitted that it would not surprise him to find out that his video camera had remained turned off for almost a full minute. He did not believe that Meadows "had stopped and then started going again," so he attempted to pull him over for driving through private property.

Here, even though the video camera was turned off for almost a minute, there is evidence that Harrison lost visual contact with Meadows for only a few seconds and that by the time Harrison caught up to Meadows, he had left the Roadway, entered Utzman Street, and was turning onto Parkview. We find that it is reasonable under these circumstances for an officer to suspect that Meadows lacked an adequate amount of time to stop his truck and then start moving again. Accordingly, we overrule this point of error.

---

[5]We presume "got on it" to mean that Harrison sped up quickly, that is, he "gunned it," "floored it," or "put the pedal to the metal."

11

*A City Police Officer May Execute a Valid Search Warrant Anywhere in the County*

In his second point of error, Meadows contends that denying his motion to suppress was error because Harrison lacked the authority to execute the search warrant outside the City of Kilgore.

Harrison obtained a search warrant from a Kilgore city judge for a sample of Meadows' blood. Because the Kilgore hospital was closed, Harrison transported Meadows outside the City of Kilgore to Good Shepherd Medical Center in Longview, where Meadows' blood sample was taken.

The search warrant directs "any Sheriff or any Peace Officer of Gregg County, Texas, or any Peace Officer of the State of Texas," to seize Meadows and carry him to a "physician, registered nurse, or medical laboratory technician skilled in the taking of HUMAN BLOOD . . . and the said physician, registered nurse, or laboratory technician shall take" samples of Meadows' blood. There is no dispute that the search warrant itself is valid county-wide, that Harrison is a peace officer of Gregg County, that both Kilgore and Longview are municipalities within Gregg County, or that the sample was taken in a proper manner.

Meadows' sole argument rests upon the fact that the Texas Local Government Code specifically grants general-law municipal police departments countywide jurisdiction, but does not similarly grant this same authority to home-rule municipalities, such as Kilgore.[6] Thus, Meadows

---

[6] According to the City of Kilgore's website, http://cityofkilgore.com/government, Kilgore is a home-rule municipality, and on our own initiative, we take judicial notice of that fact. *See* TEX. R. EVID. 201(b)(2), (c), (d), (f)

maintains, police departments of home-rule municipalities have only city-wide jurisdiction to execute search warrants.

Section 341.001 of the Texas Local Government Code, applying to Type A municipalities, states:

> (e)    A police officer has:
> (1)    the powers, right, duties, and jurisdiction granted to or imposed on a peace officer by the Code of Criminal Procedure; and
> (2)    other powers and duties prescribed by the governing body.
> (f)    A police officer may serve in each county in which the municipality is located all process issued by a municipal court.

TEX. LOC. GOV'T CODE ANN. § 341.001 (West 2005). This blanket grant of statutory authority given to police officers in Type A municipalities contrasts with Section 341.003 of the Local Government Code, entitled "Police Force of a Home–Rule Municipality," which says only that "[a] home-rule municipality may provide for a police department." TEX. LOC. GOV'T CODE ANN. § 341.003 (West 2005).

If a police officer's geographic jurisdiction is not found in some statute, it is controlled by the common law. *State v. Kurtz*, 111 S.W.3d 315 (Tex. App.—Dallas 2003), *aff'd*, 152 S.W.3d 72 (Tex. Crim. App. 2004) (traffic stop improper because offense occurred outside city limits); *see Angel v. State*, 740 S.W.2d 727, 732–33 (Tex. Crim. App. 1987) (relying on former revised civil statutes Articles 998 and 999, held that officer's jurisdiction is county-wide, but case was later

---

(at any stage of proceeding, court in its discretion and on its own motion can take judicial notice of facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned); *see also Watkins v. State*, 245 S.W.3d 444, 455 (Tex. Crim. App. 2008).

superseded by statute, and it continues to be cited today for holding that jurisdiction is determined by common law if it is not found in statute).  At common law, a police officer's jurisdiction was confined to the limits of his city.  *See Landrum v. State*, 751 S.W.2d 530, 531 (Tex. App.—Dallas 1988), *pet. ref'd*, 795 S.W.2d 205 (Tex. Crim. App. 1990) (per curiam).  Thus, unless there exists some statutory authority for extension of that jurisdiction, the city officer's jurisdiction was limited to the city's geographical limits.  *See Angel*, 740 S.W.2d at 732.  However, we find the *Kurtz* line of cases to be distinguishable from the present case because the investigative stop in *Kurtz* was a detention, falling under the powers of arrest, rather than a search, such as we have here.

Our sister court in Fort Worth directly addressed this issue in *$27,877.00 Current Money of United States v. State*, and determined that "a home-rule municipal police force's jurisdiction for the execution of a valid search warrant is at least as broad as that of a general-law municipality, that is, at least countywide."  331 S.W.3d 110, 117 (Tex. App.—Fort Worth 2010, pet. denied) (citing *Brother v. State*, 85 S.W.3d 377, 385 (Tex. App.—Fort Worth 2000), *aff'd*, 166 S.W.3d 255 (Tex. Crim. App. 2005) (holding jurisdiction of a Type A municipality police officer is "at least county-wide"); *see also Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex. 1998) ("[A] home rule city . . . has all the powers of the state not inconsistent with the Constitution, the general laws, or the city's charter . . . .").  The Fort Worth court reasoned:

> Home-rule municipalities are different from general-law municipalities because a "home rule city derives its power not from the Legislature but from Article XI,

14

Section 5, of the Texas Constitution." *Lower Colo. River Auth. v. City of San Marcos*, 523 S.W.2d 641, 643 (Tex. 1975); *see also* TEX. CONST. ART. XI, § 5. They possess "the full power of self government and look to the Legislature not for grants of power, but only for limitations on their power." *Dallas Merchs.' & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490–91 (Tex. 1993). A home-rule municipality's powers may therefore be limited by statute, but only when the legislature's intention to do so appears "with unmistakable clarity." *Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex. 1998).

The reason that section 341.003 does not grant home-rule police countywide jurisdiction is because home-rule municipalities do not receive their grants of power from the legislature. See *Lower Colo. River Auth.*, 523 S.W.2d at 643. General-law municipalities, on the other hand, do. See *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 645 (Tex. 2004) ("General-law municipalities . . . are political subdivisions created by the State and, as such, possess those powers and privileges that the State expressly confers upon them."). We do not see in local government code sections 341.001 or 341.003, or in any other statute, any clear intent by the legislature to restrict a home-rule municipality police force to a jurisdiction any less than that of a general-law municipality.

*$27,877.00 Current Money of United States*, 331 S.W.3d at 115–16.

It is the duty of every peace officer, when a search warrant is duly delivered to him, to "execute it without delay." TEX. CODE CRIM. PROC. ANN. art. 18.06 (West 2005). A search warrant is sufficient if it "command[s] any peace officer of the proper county to search forthwith the person, place, or thing named." TEX. CODE CRIM. PROC. ANN. art. 18.04 (West 2005). The search warrant in this case authorized "the Sheriff or any Peace Officer of Gregg County, Texas or any Peace Officer of the State of Texas" to conduct the search described within it. City police officers are "peace officers" as defined by Article 2.12(3) of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 2.12(3) (West 2010). The Texas Penal Code does

15

not define the phrase "of the county" or "of the State of Texas," but since a warrant must command a peace officer "of the proper county," we take "Peace Officer of Gregg County" to mean a peace officer with jurisdiction throughout Gregg County. *See $27,877.00 Current Money of United States*, 331 S.W.3d at 117.

We agree with the well-reasoned opinion in *$27,877.00 Current Money of United States*, and hold that a home-rule municipal police force's jurisdiction for the execution of a valid search warrant is at least countywide. Because the search warrant in this case was issued in Kilgore, in Gregg County, by a magistrate with jurisdiction in Gregg County, to a Kilgore police officer with jurisdiction in Gregg County, we hold that Officer Harrison acted within his duty and jurisdiction to accept the search warrant and execute it. Accordingly, we overrule this point of error.

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:     October 19, 2011
Date Decided:      November 15, 2011

Publish

16